WESTMORELAND, by his guardian, &c. v. HALE.

1. The act of 1819, which gives a summary remedy against a sheriff and his sureties, for the failure to return an execution, does not extend to an execution issued on a decree of the orphans' court, and made returnable to one of the *return days* which the judge of the county court is required, by the act of 1821 to appoint. *Quere?* If such execution was returnable to a *stated term* of the county court, could the sheriff and his sureties be proceeded against summarily for a failure to return it?

2. The act of 1807, which declares that the unsuccessful party shall be liable for the costs, applies to all cases at law in which the plaintiff fails, whether the suit is instituted in the ordinary form, or whether the court in which redress is sought has jurisdiction or not.

Writ of Error to the Orphans' Court of Macon.

THIS was a proceeding by notice and motion against the defendant in error for failing to return a writ of *fieri facias* placed in his hands, as the sheriff of Montgomery. The notice describes the execution with particularity, as to the date, amount, parties, &c.; states that on the 21st December, 1845, it was delivered to the defendant, and returnable on the second Monday in January; and indicates that the motion will be made under the act of 1819. Upon the case coming before the court pursuant to the notice, the defendant moved to dismiss the proceeding for want of jurisdiction; the motion was accordingly granted, and judgment rendered against the plaintiff for costs.

J. W. PRYOR, for the plaintiff in error, insisted that the jurisdiction of the orphans' court was maintainable from the different statutes regulating the duties of sheriffs. All persons who recover any debt, damages, or costs, by judgment of any court, may enforce the collection by *fieri facias*. [Cl. Dig. 199, § 1.] Orphans' courts are courts of record, and their decrees have the force and effect of judgments, on which

Westmoreland, &c, v. Hale.

execution may issue. [Clay's Dig. 300, § 21.] Such executions, like all others must go into the sheriff's hands, who must obey their mandate. [Clay's Dig. 305, § 43; 336, § 131.] And for his neglect to do so, may be ruled as in other cases. [Clay's Dig. 206, § 22.] Constables are subject to the proceeding by notice for official neglect. [Clay's Dig. 219, § 87.] So are sheriffs who fail to return executions for costs from the supreme court. The entire scope of legislation upon this subject shows, that the present case comes within the act of 1819. [15 Mass. Rep. 206; Minor's Rep. 48; 1 Stew. Rep. 63; Ld. Raym. Rep. 1028; 1 Pet. Rep. 46; 1 Dall. Rep. 136; 5 Humph. Rep. 379; 8 Ala. R. 179; Clay's Dig. 296, § 1; 297, § 4.]

J. E. BELSER and J. A. ELMORE, for the defendants in error contended, that a rule against a sheriff for failing to return an execution to the orphans' court cannot be supported, under the act of 1819. [Clay's Dig. 206, § 22.] That is a court of special and limited jurisdiction, and can only exercise such power as is conferred by statute. [2 Har. & G. R. 120; 3 Ala. Rep. 674; 1 Saund. Rep. 97; 1 Johns. R. 20, 228; 4 Cranch's Rep. 75; Minor's Rep. 143; 2 Ala. Rep. 646; 4 Id. 755.] Neither the letter or spirit of a statute considered singly, can confer jurisdiction, or impose a penalty or forfeiture—both must concur, and express words are necessary. [6 Bac. Ab. 384, 388, 392; 19 Vin. Ab. 514, § 33, 516, § 52; Strange's Rep. 260; 11 Coke Rep. 65; Dwarris on Sta. 69; 2 Johns. Rep. 379; 1 Mass. Rep. 167; 3 Caine's Rep. 259; 8 Porter's Rep. 564; 4 Ala. Rep. 344; 6 Id. 625; 8 Id. 517, 655.] The remedy against sheriffs, by the act of 1819, is cumulative, and will lie only where it is expressly given. [6 Bac. Ab. 393; 4 T. Rep. 116; 5 Stew. & P. R. 446; 1 Ala. Rep. 227; 3 Id. 361, 239, 421, 465; 8 Id. 177, 508; 19 Vin. Ab. 503, § 4; 512, § 12, 13, and notes.]

In construing a statute prescribing new remedies, reference must be had to the courts, and their jurisdiction as exercised at the time of its enactment; and only those expressly named, or exercising their powers according to the course of the common law, can give effect to such remedy. [6 Coke's R.

20.] Statutes conferring general powers, or expressed in general terms, must be construed in reference to the subject matter, and may be restricted accordingly. [Clay's Dig. 63, § 39, 40; 217, § 80; 218, § 86; 6 Ala. Rep. 625; 8 Id. 121.]

The orphans' court was created previous to 1819, but its power to issue executions was afterwards conferred: *besides*, the mode of its organization, procedure, &c. are so peculiar and restricted, as to forbid the conclusion that it can entertain the present case. [Clay's Dig. 300, § 21; 303, § 31; 304, § 37, 42; 204, § 14; 343, § 166, 170; Minor's Rep. 425; 1 Stew. Rep. 63, 375; 8 Ala. R. 121.] It results from what has been said, that the case was properly dismissed at the plaintiff's cost. [1 Pet. Rep. 340; 2 Tyler's Rep. 218; 4 Johns. Rep. 291; 19 Id. 39; Minor's Rep. 64; Clay's D. 316, § 20; 1 Root Rep. 409; 2 Bailey Rep. 409; 4 Blackf. Rep. 356.]

COLLIER, C. J.—The act of 1807 declares, that "all persons who shall recover any debt," &c. "by the judgment of any court of record within this State, may at their election, prosecute writs of *fieri facias*," &c. [Clay's Dig. 199, § 1.] This enactment, though applying professedly to all courts of record, was limited in its operation to those which were permitted to render judgments on which executions could issue, and did not necessarily confer the power to render such judgments, or in any manner interfere with the previous proceedings in a cause. The authority of a court to issue execution, depends upon the manner of its organization, and the extent of its powers, and is not a necessary sequence from the adjudication of the rights of parties before it. This is a conclusion well supported, not only by adjudged cases, but by the legislation of this State in respect to the orphans' court. By the act of 1821, it is enacted, that "the documents and evidence of all settlements made with executors, administrators, and guardians, shall be carefully preserved by the clerk of the county court, and the settlement entered of record; which evidence, vouchers, documents and settlements shall be good evidence in any suit for

or against such executor, administrator or guardian, and shall
not be impeached except for fraud in obtaining the same."
[Clay's Dig. 304, § 37.]    Here is a clear indication that the
legislature never intended that an execution should issue up-
on a settlement made by the orphans' court of the accounts
of an executor, &c., although it is declared to be conclusive
upon the rights of all parties, unless fraud is shown.    And
such was not only the construction in practice, but it has
been repeatedly so ruled by this court.    Money adjudged in
such cases to be paid to legatees, distributees, &c. was not
collected under an execution issued upon an order or decree
in their favor, until 1830, when it was enacted that " all de-
crees made by the orphans' court on final settlement on the
accounts of executors, administrators, and guardians, shall
have the force and effect of judgments at law, and execu-
tions may issue thereon, for the collection of the several dis-
tributive amounts against such executor, administrator, or
guardian."    It is further provided, that when such distribu-
tion is decreed, each distributee, &c. shall, in case of person-
al estate, have a writ of execution or attachment, or both ;
and in case of real estate, a writ of *habere facias possessib-
nem* against the distributee, &c.; " and the sheriff to whom
the writ shall be directed shall execute the same according
to the command thereof." [Clay's Dig. 304, § 42 ; 305, §
43.]

The act of 1821, remodeled the county court, and to a
great extent prescribed the duties of the judge thereof, in the
exercise of jurisdiction over the estates of deceased persons,
and kindred cases.    Among other things, it provided, that
he shall have power within the county, to take the probate
of wills, &c., and to make all necessary orders for the issu-
ing process, and other purposes, within his jurisdiction, ac-
cording to such regulations as are, or may be, established by
law in such cases.    Each judge is required, by order in open
court, to appoint certain days, *not less than one day in every
period of each month*, for the return of process in such cases
as he is competent to hear and determine in vacation, and on
each return day shall attend at the court house, or place ap-
pointed for holding the county court, to determine such ca-
ses.    All process issued in such cases shall be returnable to

the next return day, or if the party applying therefor shall so require, to some other return day, or stated session, &c. " The clerk of the court and sheriff shall attend the sittings of the judge on return days, as well as at the stated sessions." [Clay's Dig. 303, § 31.] This statute does not confer upon the judge of the county court authority to dispose of all cases pertaining to the orphans' court, at a return day to be appointed by him; but he is then only to act upon such matters as he is competent to hear and determine in vacation, and only process in such cases shall be then returnable.

In the case at bar, the execution was made returnable to the orphans' court on a day appointed by the judge for the return of process; and the notice of the motion for failing to return it, was also returnable on one of these days. The questions now raised upon the execution and motion, are, whether the former is not a nullity, or if not, whether the latter can be supported. It is indicated by the notice that the proceeding was instituted under the act of 1819, for the failure to return the execution. That enactment, as subsequently amended, provides, that if a sheriff shall fail to return an execution to the clerk's office from which it shall issue, at least three days previous to the term of the court to which it shall be returnable, the person aggrieved shall move against such delinquent sheriff, and have judgment against him and his sureties, &c [Clay's Dig. 205, § 21; 206, § 22; 336, § 131.]

From this notice of the legislation upon the subject, it is sufficiently apparent that the orphans' court was not authorized to issue an execution upon its decrees, until the act of 1830 was passed, and it is therefore argued, that as it is a court of special and limited jurisdiction, the act of 1819 cannot, by construction, apply to such executions. Waiving the consideration of this argument in the form in which it is presented, we may concede that it is not perfectly clear that an execution issued from the orphans' court, should be returned to one of the return days appointed by the judge thereof. These return days, as we have seen, are directed by the act of 1821, to be appointed for the return of process in such cases as he is competent to hear and determine in vacation. Can these return days be regarded as so many terms of the

orphans' court, or is not the "stated session" to which such process *may be returnable*, the time of holding the county court which the legislature has prescribed? *Again*: The act of 1819 contemplates an execution returnable to a term of the court from which it issued, and as it is highly penal, can the extraordinary remedy which it gives be applied to one which is directed to be returned in vacation? We make these inquiries, as they have been suggested by the argument of another case at this term, and leave them for future consideration.

Conceding that the execution in the case before us was regular, and that it was the duty of the sheriff to obey its mandates, and we think the orphans' court rightly repudiated the motion. There is certainly no statute which authorizes that court to entertain an action prosecuted in the ordinary form against an officer for disobedience to its order, or any other cause; and its jurisdiction of the proceeding in question can only be supported by an unwarrantable construction of the statutes we have noticed. Such an exercise of power does not come within the appropriate jurisdiction of an orphans' court. The trial of an issue in such a proceeding does not involve a question affecting the duties and liabilities of executors, administrators or guardians, but is independent of and disconnected with them. The form of the judgment assumes as its basis a neglect of official duty, and is not only for the amount of the execution, but for damages in addition; and this without reference to the solvency of the defendant in execution. If the party in whose favor a decree of the orphans' court is rendered, would avail himself of the summary remedy against sheriffs, &c., he should cause his execution to be returned to a *stated term* of the county court. We will not say that the sheriff would even then be chargeable for a neglect to return it—that question is not necessarily presented; but we are satisfied that an execution returnable to a return day appointed by the act of 1821, is not embraced by the statute of 1819. This latter enactment, as we have said, is highly penal, and cannot be extended by construction—the orphans' court is one of special and limited powers, which are defined by the legislature—none of which,

expressly or by necessary implication, confer the jurisdiction which that court is called on to exercise in this case.

Whether, if the execution is regular, the orphans' court could not coerce its return by attachment, or whether an action would not lie in the proper tribunal for the sheriff's neglect, are questions not now presented.

We need not inquire whether this case comes within the letter of the act of 1807, which makes the unsuccessful party liable for costs. [Clay's Dig. 316, § 20.] That statute has been practically and judicially applied to all cases at law in which the actor is unsuccessful, whether the suit be instituted by writ in the ordinary form, or whether the court has jurisdiction to give the redress sought, if the case be supported by proof. It therefore results from what has been said, that the judgment of the orphans' court must be affirmed.