(78 South. 204)

PEERSON v. ASHCRAFT COTTON MILLS et al. (8 Div. 29.)

(Supreme Court of Alabama. Dec. 20, 1917. Rehearing Denied March 23, 1918.)

1. MALICIOUS PROSECUTION ⬡══11—CIVIL ACTION—ABSENCE OF ARREST OR SEIZURE.
  Even in the absence of an arrest of his person or a seizure of his property, the successful defendant has an action against plaintiff who has proceeded against him to his damage in a civil action maliciously and without probable cause.
2. MALICIOUS PROSECUTION ⬡══10—CIVIL ACTION—PROBABLE CAUSE.
  At the ancient common law an action would lie for the malicious prosecution without probable cause of a mere civil action.

Anderson, C. J., and McClellan and Mayfield, JJ., dissenting.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Action by J. M. Peerson against the Ashcraft Cotton Mills and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

A. A. Williams, of Florence, for appellant. Ashcraft & Bradshaw and Mitchell & Hughston, all of Florence, for appellees.

SAYRE, J. [1] The sole question raised in argument on this appeal is whether, in the absence of an arrest of his person or a seizure of his property, the successful defendant may have an action against the plaintiff who has proceeded against him to his damage in a civil action maliciously and without probable cause. So far as we are advised, this question has never arisen for decision in this court. It has, however, been much debated and differently decided in other jurisdictions. We think it enough to briefly indicate the reason and authority for our conclusion that the question at issue should be answered in the affirmative:

[2] The legislative history of this question —and it is an ancient one—is stated in Lehigh Valley R. R. Co. v. McFarland, 44 N. J. Law, 674. At the ancient common law an action for the malicious prosecution without probable cause of a mere civil action would lie. Kolka v. Jones, 6 N. D. 461, 71 N. W. 558, 66 Am. St. Rep. 615, where the authorities are cited. It has been supposed in England and in some of our states that the statute of Marlbridge, 52 Hen. III, c. 6, anno 1267, denied the right of action in such cases, and so established for the courts of this country the common law to the effect that the award of costs to a successful defendant is in lieu of all damages; but, as shown by Corliss, C. J., in Kolka v. Jones, supra, the statute referred to gave to the successful defendant in a civil action maliciously prosecuted not merely his costs, but also his damages, thus conferring upon him a summary remedy in such case, instead of compelling him to seek redress in an independent action. "The effect of the statute," as stated in 19 Am. & Eng. Ency. 652, "was therefore to supersede the subsequent action for the malicious prosecution of a civil suit, unless there was a wrongful arrest of the person, or seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for like causes." There is a wide and obvious difference between such legislation and the statutory enactments of this country, and the learned Chief Justice has observed in the case supra "that our meager bill of costs was intended to recompense the victim of the malicious prosecution of a civil suit is, to our minds, unthinkable."

It is to be conceded that formerly the numerical preponderance of authority in this country lay on the side of the negative of the question under consideration. But, it seems, the majority of the courts have come around to the other view. Many of the decisions pro and con are cited in Kolka v. Jones, supra. Many cases are also cited in the note to McCormick Harvesting Co. v. Willan, 93 Am. St. Rep. 449, 467, 468, where the editor, Judge Freeman, says:

"Perhaps it may be safe to state that the weight of authority sustains the rule, that for

a malicious prosecution of a civil action without probable cause, to the injury of the defendant therein, the plaintiff is answerable to him, though the latter was not arrested nor his property or rights therein interfered with in any manner."

The learned editor announces his belief that this is the better rule and the one which ought to be maintained in this country. Still another list of cases supporting the action is found in the note to Luby v. Bennett, 87 Am. St. Rep. 897.

Several arguments are advanced against the right of action in such cases: (1) The successful defendant is fully compensated by the award of costs. As to this point we concur in the statement of Corliss, C. J., quoted above. It seems quite plain that a judgment for costs under our statutes cannot compensate for the necessary and reasonable expenses of the defense to which the defendant may be put, nor make good an injury to reputation suffered by reason of the plaintiff's malicious allegations. (2) The courts should be open to litigants who ought not to be deterred from the assertion of their honest claims by the fear of retaliatory suits for damages in the event of a failure. But we lay down a rule for cases in which civil actions have been prosecuted maliciously and without probable cause. No policy of the law encourages suits of that character. (3) On the other hand, it is said that under the rule we have approved suit may follow suit in interminable succession, and there ought to be an end of litigation. The principle of this argument is refuted by the law's declaration that for every wrong there is a remedy, and especially is this so where the injury is malicious. As for practical results, the testimonies of the judges in other jurisdictions concur to the effect that this rule has brought to the courts no crowd of rashly importunate litigants.

A number of the courts and some very respectable text-writers hold otherwise. But our judgment, upon consideration of the authorities, may be expressed in the language of the text on the subject of malicious prosecution, 26 Cyc. 15, 16, written by Prof. Jaggard, as follows:

"The general American opinion * * * is that costs in that [this] country, unlike the English costs, awarded per falsum clamorem, are not designed to and in fact do not amount to a remedy of compensation for the wrong so committed by the party who first put the law vexatiously in motion and who can be charged in malicious prosecution only after plaintiff in that action has faced the sufficient deterrent of the burden of proof as to the many elements of that tort. The prevailing rule is accordingly that the action may lie, although the original proceeding was begun by a civil summons only and the party seeking recovery was not arrested and his property was not seized, and he suffered no peculiar injury."

And the text-writer adds, with what logic or effect we need not now require, "but only when the want of probable cause is very palpable."

The complaint alleges special damages—and perhaps, in view of our statute awarding costs in every case, that was necessary—and the judgment of this court is that the demurrer should have been overruled.

The court is further of the opinion that the question discussed has been sufficiently raised by the assignments of error.

Reversed and remanded.

SOMERVILLE, GARDNER, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., dissent.

McCLELLAN, J. (dissenting). This is an action for damages instituted by the appellant against the appellees. The demurrer of the defendants being sustained, the plaintiff took a nonsuit because of the adverse ruling thus made.

Omitting only the formal parts, the single count of the complaint is in these words:

"That defendants, maliciously and without probable cause, and for the purpose of damaging and harassing plaintiff, procured a bill of complaint to be filed against plaintiff in the chancery court of Lauderdale county, Ala., on the 8th day of March, 1912, the style of said cause being W. M. Gray, L. H. Springer, Tom Putnam, R. L. Springer, J. W. Gladney, Robert Killen, A. T. Davis, C. T. Wright and W. M. Neely, complainants, against J. M. Peerson, defendant. That defendants wrongfully, maliciously and without probable cause procured the issuance of process against this plaintiff as prayed for in said bill of complaint, requiring plaintiff to appear and answer said complaint. The 'defendants maliciously and without probable cause, and with intent to injure plaintiff, did hire, persuade or procure the said complainants in said bill of complaint to permit the defendant's attorneys to file said bill of complaint in their names against plaintiff, well knowing that said complainants had no cause of action against this plaintiff. That said attorneys, who in fact were the attorneys for defendants Ashcraft Cotton Mills and C. W. Ashcraft, but who appear in said bill of complaint as the solicitors for said W. M. Gray et al., falsely, maliciously and without probable cause alleged in said bill of complaint, among other things, that this defendant had defrauded the complainants therein and the other stockholders of the Lauderdale County Farmers' Union Warehouse Company out of their property and undertook therein to have the court cancel plaintiff's title to said property known as block 494 in Florence, Ala., on the ground of fraud. Plaintiff avers that at the time of the filing of said bill of complaint in said chancery court he was interested in a gin and oil business located on said block 494, which said business was in competition with the business being operated by the defendants herein, and that the purpose of defendants in procuring the filing of said bill of complaint and in the prosecution thereof in said chancery court was to destroy competition and to damage plaintiff in his business. That plaintiff was required to and did answer said complaint in said chancery court, and that said cause was duly submitted to the chancellor of said court, the Hon. W. H. Simpson, and that said court on the 15th day of July, 1914, rendered a decree in said cause decreeing that the complainants therein were not entitled to relief and dismissing said bill of complaint. That in defending said pretended cause of action so maliciously begun and prosecuted plaintiff was compelled to and did employ

counsel, and that the services rendered by his attorney therein was of the reasonable value of $1,000, which sum is specially claimed as damages in this cause. And plaintiff avers that because of the prosecution of said chancery suit as aforesaid he has suffered great loss of time and expended large sums of money other than his attorney's fees in making his defense to said malicious prosecution, and that he has been damaged in the sum aforesaid."

At the risk of at least a degree of repetition, an analysis of the count seems to be desirable. In analyzing the count, for the purpose of determining its sufficiency on demurrer, the count must be construed most strongly against the pleader. Zavello v. Reeves, 171 Ala. 401, 54 South. 654; 10 Michie's Dig. Ala. Rep. p. 1005. It is averred that Gladney and others were the complainants and J. M. Peerson (plaintiff in the present action) the defendant in the chancery cause mentioned in the complaint. It appears from the count that neither the Ashcraft Cotton Mills, a corporation, nor C. W. Ashcraft—the defendants in the present action,—were parties to the chancery cause instituted by Gladney and others against Peerson. It also appears that the wrong sought to be remedied in the chancery cause was an alleged fraud against the complainants in that cause, and not against the defendants in this action, viz. Ashcraft Cotton Mills and C. W. Ashcraft. It also appears from the count that the subject-matter of the chancery cause, to which the defendants in the present action were not parties, was a lot in Florence, Ala., Peerson's title to which, it was alleged in the chancery cause, was obtained through fraud practiced upon Gladney and others. It also appears from the count that the solicitors representing Gladney and others in the chancery cause were "in fact * * * the attorneys for the defendants" in the present action; that these attorneys (not the defendants in the present action, it is to be noted) "falsely, maliciously and without probable cause" alleged in the bill Peerson's fraud in procuring title to the lot described; and that the defendants in the present action "maliciously and without probable cause and with intent to injure" Peerson "did hire, persuade or procure" Gladney and others "to permit the defendant's [Ashcraft Cotton Mills and C. W. Ashcraft] attorneys to file said bill of complaint in their names against the plaintiff [Peerson], well knowing that said complainants had no cause of action against this plaintiff"; but, notwithstanding this averment that these attorneys were the attorneys of these defendants, it is later alleged in the count that the defending attorneys were employed by said Peerson. It is also averred that the motive, the purpose inspiring the defendants in the present cause was to damage or destroy Peerson's business which was in competition to the business of the defendants in the present action. It is also alleged that the hearing in the chancery cause resulted in a final decree against Gladney and others and in favor of the present plaintiff, Peerson; and in consequence of the necessary defense of the chancery cause Peerson suffered damages, among other things, the expense of his solicitors in the chancery cause. It is to be observed that there is no claim of damages as to Peerson's business.

It is to be seen that the general theory of actionable wrong which the count would assert is this: That a corporation and an individual maliciously and without probable cause instigated third persons to institute a groundless civil cause against the plaintiff in the present action, such instigators being strangers in interest to the subject-matter of the groundless civil cause to institute which they, with wrongful motive and purpose, moved complainants Gladney and others. Whether the count efficiently set forth a cause of action in the circumstances disclosed by the averments of the count, as against grounds of the demurrer interposed, was the question submitted to and decided by the trial court, and is the question to be reviewed here. In Reynolds v. Carter, 32 Ala. 445, 446, this court, through approving quotation, said:

"In the opinion in Perren v. Bud, Cro. Eliz. 794, which has been followed in the subsequent cases, it is said: 'If one procures another to sue me without cause, an action lies not against him who sued without cause, but for this falsity in procuring my vexation an action well lies.' In Savil v. Roberts, 1 Salkeld, 13, we find a similar statement of the law, in the following words: 'If one that is not concerned, as a stranger, procure another to sue me causelessly, I may maintain an action against him generally.' We cite several authorities, which maintain the same proposition, and discuss generally the subject of actions to recover damages resulting from vexatious suits."

Among others, the demurrer to the complaint contained ground 6, which reads:

"For aught that appears by the complaint said complainants [i. e., Gladney and others] in said chancery suit had probable cause to believe that Gladney and others had a valid right of action against said J. M. Peerson."

The objection taken by the quoted ground of demurrer was due to be sustained. In Reynolds v. Carter, supra, this court noted Flight v. Leman, 4 Ad. & El.; s. c., 45 E. C. L. 883. The complaint considered by the court in Flight v. Leman assumed to set forth a cause of action similar to that here declared on. There, it was alleged, Leman had unlawfully and maliciously instigated and procured Thomas to commence and prosecute a false action of trespass on the case against Flight and others, "intending to injure, harass and damnify" Flight, which action resulted in a judgment favorable to Flight and his codefendants. It was held that the complaint was defective because of the omission to aver therein that the institution of the action of trespass on the case was without probable cause therefor.

It is not improper to note at this point that during the argument of Barstow, coun-

sel for the plaintiff, Justice Coleridge propounded this question:

"Suppose I know of a defect in your title to land, and even from malice to you inform the legal owner; is that actionable?"

The response of the counsel was this:

"That might be actionable or not under the peculiar circumstances of the case."

That a lawful act is not made actionable by the malevolence of the intent with which it is done has been decided here in Sparks v. McCreary, 156 Ala. 382, 387, 388, 47 South. 332, 22 L. R. A. (N. S.) 1224. The opinions of the members of the court on the objection taken by special demurrer, that the complaint in Flight v. Leman should have negatived the existence of probable cause for the institution of the original action of trespass on the case, are brief and apt, and may be conveniently quoted:

"Lord Denman, C. J. The case of Pechell v. Watson proceeded on the principle that to maintain an action already commenced was unlawful. That is not here charged; and therefore the count ought to show the ingredients which make the instigation to a suit actionable. The plaintiff has not done this; for, beyond all doubt, the absence of reasonable or probable cause is one such ingredient, in the absence of which it does not appear that the plaintiff has been unlawfully disturbed.

"Patteson, J. I think this declaration is bad, for the reason already given. The case is analogous to that of a complaint of malicious prosecution or arrest; and here, as there, the want of reasonable or probable cause ought to be alleged.

"Williams, J. The averments in this declaration might be sustained by proof that the defendant, not being an attorney, had held a conversation with Thomas, and had said, 'If your story is correct, you might sue Flight.' No action could be maintained on that, unless it further appeared that the now defendant knew that there was no right to sue the now plaintiff.

"Coleridge, J. It is not asserted here that the suit maintained was without reasonable or probable cause; there are only general words, imputing an instigation and stirring up. There should be added to these, in strict analogy with actions for malicious prosecution or arrest, as my Brother Patteson has pointed out, an averment of want of reasonable or probable cause; and without such averment this declaration shows no right of action."

The count in the present instance does not allege the absence of probable cause for instituting the suit, the institution of which by Gladney and others is the pith of Peerson's complaint. It is averred that the Ashcraft Cotton Mills and C. W. Ashcraft maliciously and without probable cause procured Gladney and others to institute the chancery cause against Peerson, and that the present defendants well knew that Gladney and others had no cause of action against the plaintiff; but neither of these averments, nor both concurring, affirm the absence of probable cause for the institution of the chancery cause. If the count had affirmed that the present defendants knew, when maliciously instigating Gladney and others to institute the cause, that there was no probable cause for instituting the chancery cause to remedy the wrong asserted in the chancery cause, the complaint would have avoided the fault pointed out in the sixth ground of the demurrer. One may, in point of fact, have no cause of action against another, and, notwithstanding, may have probable cause to justify his impleading another to vindicate a conceived right or redress a wrong. The averment that the defendants in the present action "maliciously and without probable cause" procured or instigated or hired Gladney and others to institute the chancery cause is not the equivalent, as appears, of an allegation that the chancery cause had not the support of probable cause to justify the institution of the chancery cause. Manifestly, if there was probable cause to justify the institution of the chancery cause against Peerson, the ascertainment and adjudication of that fact would defeat the cause of action this plaintiff would assert, notwithstanding these defendants entertained malice in instigating Gladney and others to implead this plaintiff. When referred to the fifth ground of demurrer, like considerations justified the ruling of the trial court in sustaining the demurrer. That ground reads:

5. It does not appear by said complaint but that defendants had probable cause to believe that said Gladney et al. had a valid cause of action against said J. M. Peerson.

The probable cause, the existence of which is negatived by the averments of the count, is restricted to the act or process of instigating Gladney and others to institute the chancery cause, and does not affirm the absence of probable cause for instituting the chancery cause. Since demurrer is not the proper method to question the right to recover damages improperly claimed (4 Michie's Dig. Ala. Rep. p. 668), the court could not have been justified in sustaining the eighth and ninth grounds of demurrer which were predicated of the reference in the count to the charge of fraud, on the part of Peerson, asserted in the bill in the chancery cause; that averment in the count under consideration being, at best, only referable, if of any effect, to the measure of the recovery, and not to the right to maintain the action for the wrong sought to be declared on.

Several grounds of demurrer seek to invoke the application, in this jurisdiction, of the doctrine prevailing in some jurisdictions and denied in still others, that an action for damages will not lie for the institution, maliciously and without probable cause, of a civil action commenced by summons only, whereby no restraint of the person or seizure of property is effected. Reference to Judge Freeman's note to McCormack Harvesting Co. v. Willan, 93 Am. St. Rep. 454 et seq., 1 Cooley on Torts, p. 349 et seq., 18 R. C. L. pp. 13, 14, and annotations, will disclose the irreconcilable conflict in which the decisions on the subject now rest. The question is said to be, and undoubtedly is, an open one in this jurisdiction. The nearest approach to a considera-

tion of the question by this court may be found in Reynolds v. Carter, 32 Ala. 444. There Reynolds, as administrator, had sued Carter in detinue, took a nonsuit, and judgment for cost de bonis intestatis was rendered against Reynolds. Execution, pursuant to the judgment, was issued and returned nulla bona. Then an execution was issued to be satisfied out of the goods of Reynolds individually (de bonis propriis). Thereupon Reynolds filed his bill to enjoin the enforcement of the execution against him as an individual. The ground of the bill was that subsequent to the rendition of the judgment de bonis intestatis, the estate of Reynolds' intestate was declared insolvent by a proper court. The court denied the equity of Reynolds' bill to enjoin the enforcement of the execution against him personally, and so because of the liability of Reynolds individually for maliciously and without probable cause instituting, in his representative capacity, the action of detinue against Carter; the court applying to this status the doctrine of the quotations hereinabove reproduced from the case of Perren v. Bud and Savil v. Roberts. In concluding the opinion this court said in Reynolds v. Carter:

"For the reasons above set forth, we decide that the complainant is responsible to the defendant for the damages caused to the latter by the action at law. The execution for the costs of the action at law was returned 'No property found,' and therefore the defendant has sustained damage, *to the amount of his costs*, and the complainant should not be relieved from the payment of the judgment *for that amount*, which, by virtue of the return of nulla bona, the defendant has against him." (Italics supplied.)

As a matter of fact, the following statute (Code 1852, § 1923) required a conclusion against the equity of Reynolds' bill:

"When any judgment is or has been rendered in the circuit court against any executor or administrator as such, and an execution thereon has been returned 'No property' by the sheriff, or other officer of the county in which such judgment was rendered, an execution may issue against the executor or administrator, personally, to be levied on his goods and chattels, lands and tenements."

Notwithstanding the provisions of this statute, it appears that the court accepted as the limit of the recoverable damage the defendant had sustained by reason of Reynolds' act to be "the amount of his [Carter's] costs," since it nowhere appears in the opinion of this court that the conclusion attained was based upon the terms of the statute quoted above. The proposition asserted through these last-mentioned grounds of demurrer is not at all applicable to the count under consideration, for the reason that the present demurrants were not parties to the chancery cause described in the bill filed by Gladney and others against Peerson. Under our statutes a judgment or decree for costs can only be awarded a party to a cause, against a party to a cause, unless there is a fund in the control of the court of equity upon which the court may impose the satis-

faction of the costs of the cause, in whole or in part. The wrong declared on by this plaintiff was not one for which he could be compensated by a judgment for, and the actual payment of, costs under the statutes of this state, even if our cost statutes were identical with the statute of Marlbridge (52 Henry III) in the respect that that statute conferred on a successful defendant to a civil action, maliciously and without probable cause instituted by the plaintiff, the right, against the plaintiff, to recover damages suffered by the defendant in consequence of his being wrongfully impleaded by the plaintiff. Since the divergence of opinion in this country arises over the effect of cost statutes to limit the damage to which a successful defendant may be entitled because of the vexation of being wrongfully impleaded by the unsuccessful plaintiff, against whom a judgment for costs may be rendered, it is quite clear that factors are there present which are not present in an action for damages for maliciously and without probable cause instigating a third person to institute a civil action, against which malicious instigator no judgment for costs could be rendered.

Until this question is squarely presented for the decision of this court, it is my judgment that its consideration should not be undertaken with a view to establishing a rule in this state, especially in view of the fact that for nearly 100 years the jurisprudence of this state, as read from the decisions of its court of last resort, has not disclosed any effort to avail of the right of action for damages against a plaintiff by a successful defendant in consequence of the plaintiff's having instituted, maliciously and without probable cause, against the defendant a civil cause, commenced by summons only, which involved no restraint of the person of the defendant or the seizure of any property of the defendant.

For the reasons stated, my opinion is that the court did not err in sustaining the demurrer when the ruling is referred to the fifth and sixth grounds of the demurrer. I would, therefore, affirm the judgment.

MAYFIELD, J. (dissenting). It is decided in this case that an action for "malicious prosecution" will lie in this state against a plaintiff in a civil suit, who is cast in such suit, when neither the person nor the property of the defendant in that suit was seized, injured, or interfered with in consequence of the suit. I believe this is error, and feel that I ought to state my reasons for disagreeing.

Mr. Justice McCLELLAN, in a dissenting opinion, has shown that the case now decided is not before the court. I fully concur in what he says, to the effect that there is a vast difference between the liability of a plaintiff who fails in his suit, and that of a third party (as in this case) who wrongfully and vexatiously induces the plaintiff to bring

such suit. In fact, this court has repeatedly so decided. One of such cases is cited by Justice McCLELLAN; and no stronger cases could be hoped to be found, as to this point, than those cited and quoted by him in his opinion. The relation of principal and agent does not exist in such cases; the intermeddler is no more the agent of the plaintiff than is the plaintiff the agent of the intermeddler; it is a species of maintenance, in which both parties to the suit may be injured by the wrongdoer.

This error in the decision, however, in my judgment, is small compared with the one holding that every plaintiff who fails in any civil action at law or suit in equity, commenced by summons and complaint, is liable to be harassed by a suit for malicious prosecution. Whether the plaintiff has malice in bringing or prosecuting the suit or action is necessarily a question of fact for a jury in all cases. So there never can be a case in which the plaintiff fails, wherein he would not be liable to be sued by the successful defendant as for a malicious prosecution. To illustrate: If A. sues B., and fails in his suit, B. may sue A. as for the malicious prosecution of the first suit, and if B. fails in this second suit, A. may in turn sue B., and so on until a judgment for the plaintiff is obtained. Such a rule of law and practice will certainly breed malicious suits. It is conceded that if this right of action now exists in this state, it exists by virtue of the common law of Alabama, and not by virtue of any statute. It is also conceded that the common law of this state is partly derived from the English common law; but the error is in treating the common law of this state as being derived exclusively from the common law of England. This is one of the basic errors leading to the wrong result.

It is argued in the opinion of Mr. Justice SAYRE, for the majority, that as the right of action existed at the English common law, it also exists under the common law of this state. The opinion concedes that the right of action in England was taken away by an English statute which allowed the successful party to recover full costs and damages, but argues that as the statute in this state corresponding to the English statute does not allow a recovery of damages otherwise than in the costs, the American statute should not be given the effect which was given to the English statute. Herein are two other grave errors.

The English statute referred to became a part of the common law of this state. The English statutes in force at the Declaration of Independence were as much the law of the American colonies as was the common law of England; and if the English common law and the English statutes were in conflict, the English statute controlled and became the common law of the colonies, and consequent-

201 ALA.—23

ly of the states formed out of such territory, except where contrary to our republican form of government and republican institutions, and remained such until changed by ordinances, Constitutions, or statutes of the territories or states carved out of the colonies.

English statutes of or about the date of the one in question have been uniformly held by this court and all the courts of the original 13 states or colonies, as well as by those of other states formed out of such territory, to be a part of the common law of such states. One of these very statutes of Marlbridge has been held by the Supreme Court of Massachusetts to be a part of the common law of those states above mentioned. The opinion in that case was written by Parker, C. J., of whom it was said by his successor in office, Lemuel Shaw, that he was one of the two most learned in the common law the latter ever knew—Parsons, C. J., being the other. That opinion is in part as follows:

"Before the statute of Marlbridge, a lessee or devisee for life or years was dispunishable of waste unless care was taken in the will or lease to make him so. After that statute, such tenants were punishable, unless the will or lease expressly excused them." Sackett v. Sackett, 8 Pick. (Mass.) 314, 315. "Then the question is whether the law by which they would be governed in relation to waste committed by tenants was the ancient common law, as it stood before the statute of Marlbridge, or as modified by that statute, or the law which was in force in England at the time of their emigration and for centuries before; and we think it very clear that it was the latter." 8 Pick. (Mass.) 315.

He then quotes what his predecessor in office had said as to English statutes being a part of the common law of the states:

"Thus Chief Justice Dana, in the case Commonwealth v. Leach et al., 1 Mass. 61, says, 'The term "common law" ought not to be construed so strictly as is contended for. Generally when an English statute has been made in amendment of the common law of England, it is here to be considered as part of our common law.'" 8 Pick. (Mass.) 316.

He then quotes another of his predecessors —him whom Judge Shaw characterized as one of the two masters of the common law— as follows:

"Our ancestors, when they came into this new world claimed the common law as their birthright, and brought it with them, except such parts as were judged inapplicable to their new state and condition. The common law, thus claimed, was the common law of their native country, as it was amended or altered by English statutes in force at the time of their emigration. Those statutes were never re-enacted in this country, but were considered as incorporated into the common law. Some few other English statutes, passed since the emigration, were adopted by our courts, and now have the authority of law, derived from long practice." 8 Pick. (Mass.) 316, 317.

These cases have been cited, quoted, and followed by the courts of nearly every state in the Union, and repeatedly by this court. In the case of Carter v. Balfour. 19 Ala. 829, this court said:

"It appears that that statute was passed in the year 1601, and the first settlement of Vir-

ginia (that being the first settlement in any part of the United States) was in 1607. And the doctrine appears to be settled that English statutes passed before the emigration of our ancestors to America, and which were applicable to our situation and not inconsistent with our institutions and government, constitute a part of the common law, and are in force (unless repealed) in all the states of the Union. [Doe ex dem. Patterson v. Winn] 5 Pet. 233 [8 L. Ed. 108]; [Sackett v. Sackett] 8 Pick. [Mass.] 309; [Bogardus v. Trinity Church] 4 Paige [N. Y.] 198; 1 Kent, 472, 473; [Moore's Heirs v. Moore's Devisees] 4 Dana [Ky.] 361 [29 Am. Dec. 417]."

This latter case was cited and followed in the famous case of Horton v. Sledge, 29 Ala. 496, where it is said:

"The English statute of uses was enacted 'before the emigration of our ancestors to America, is applicable to our situation, and not inconsistent with our institutions and government, and has been generally recognized and acted upon by the courts of this country and therefore constitutes a part of the common law' of Alabama, and is in force unless repealed. Carter and Wife v. Balfour's Adm'r, 19 Ala. 829."

This last case was cited and followed as recently as the case of Louisville & Nashville Railroad Co. v. Cook, 168 Ala. 600, 53 South. 190, where it is said:

"Not only the common law of England, in part, as above defined, but some parts of her statutory law as it existed before our ancestors emigrated therefrom, became in a sense incorporated in our unwritten or common law; but the English statutes, like the common law proper, only became a part of the law of each state, when not inconsistent with the institutions, government, and laws of such state. Horton v. Sledge, 29 Ala. 478."

I am unable to find any decision of any court to the contrary, when the exact question was considered and decided. The English statute being in force in this state, except so far as changed by our statutes, no such right of action as stated in the majority opinion ever existed in this state. Surely our statutes awarding full costs to the successful party did not confer the right which did not theretofore exist. When this state was admitted into the Union it was well-settled law in all of the states of the Union that under the common law no such right of action existed in any of the states. Georgia, the state out of whose territory most all of Alabama was carved, after it was ceded to the United States, had held that no such right of action existed. It will be found that nearly if not quite all of the original 13 states had decided that no such right of action existed. The states, with a few exceptions, that have ever decided that the right of action exists at common law, were Western states, as to which the English statutes never became the common law. It is true the distinction I am making was not made in any of the decisions denying or allowing the right of action; but it seems to me that it is a valid distinction. In fact, it seems to me that the English statute having been construed by the English courts to deny the ac-

tion was impressed with that construction when it became a part of the law of the states, and that the right of action never did exist in any of the states of that class. As to the other class of states, it was open for their courts to say whether or not the right of action should exist. The fullest and best considered case on the question, so far as the Eastern states are concerned, is that of Potts v. Imlay, 4 N. J. Law, 330 (377), 7 Am. Dec. 603. In that case it was said; the Chief Justice speaking:

"The cause has been twice argued at the bar upon this reason; the last time at the request of the court, and with much ability. The books have been searched for 400 years back, and upon that search it is conceded even by the counsel for the plaintiff below, himself, that no case can be found in which this action has been maintained, in circumstances similar to the present. * * * Formerly the amercement, now the costs are the only penalty the law has given against a plaintiff for prosecuting a suit in a court of justice, in the regular and ordinary way, even though he fail in such prosecution. The courts of law are open to every citizen, and he may sue toties quoties upon the penalty of lawful costs only. These are considered as a sufficient compensation for the mere expenses of the defendant in his defense. They are given to him for this purpose, and he cannot rise up in a court of justice and say the Legislature have not given him enough. If we were legislators indeed perhaps we should be inclined to say that the costs in all cases where costs are given should completely indemnify the party for all his necessary expenses both of time and money; but those to whom this high trust is committed in this state have thought and we will presume, have wisely thought otherwise."

This learned Chief Justice quoted and approved the English court, after the passage of the statute of Marlbridge, as follows:

"To bring a civil action therefore though there be no ground, is not actionable, because it is a claim of right in the king's courts to which every subject may resort, and he has found pledges, is amercible for his false claim and liable to costs. It is not enough to declare that such action was ex malitia et sine causa, per quod, he was put to great charges; he must go further, he must shew special grievance, as that the prosecutor had no cause of action, or cause of action only to a small sum, and that he had sued out a latitat for a large sum with intent to imprison him, or do him some special prejudice."

The learned Chief Justice then summed up in a clear statement the law on this subject as follows:

"I think it may be laid down as law that this action cannot be maintained, for prosecuting a civil suit in a court of common law having competent·jurisdiction by the party himself in interest, unless the defendant has, upon such prosecution, been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from and superadded to the ordinary expense of a defense."

These are my sentiments, and, as I read our decisions, formulate the doctrine which has ever been adhered to by this court, without a shadow of turning, until this decision, which, in my opinion, overrules scores of our cases as to what is necessary to be alleged and proven in order to state and prove a

cause of action for malicious prosecution. The Legislatures of this state and territory, for 100 years, have so understood the law to be. A form of action has been prepared and adopted by the Legislature, and in use under that sanction for more than half a century. That form prepared and adopted was in accord with what this court had theretofore repeatedly held to be necessary to state a cause of action as for malicious prosecution. It has ever since, except in this case, been held that the complaint must substantially conform to this Code form in order to state a cause of action. Complaints wanting in the same averments as the one under consideration have been held not to state a cause of action as for malicious prosecution. Let us compare the complaint in question with the Code form, and see if it substantially complies with the requisites fixed by the Legislature and the decisions of this court. In my judgment it is fatally defective, as a Code form, or a common-law form before the Code was adopted. The Code form is as follows:

"The plaintiff claims of the defendant —— dollars, damages for maliciously, and without probable cause therefor, causing the plaintiff to be arrested under a warrant issued by E. F., a justice of the peace, on the —— day of ——, on a charge of larceny (or as the case may be), which charge, before the commencement of this action has been judicially investigated, and said prosecution ended, and the plaintiff discharged." Code 1907, § 5382, Form 20.

Before the Code form was adopted, it was held by this court that to constitute "a good count in case, it should have averred the issuance of process, that the process should have been properly described, and that it should have further averred that the plaintiff was arrested and imprisoned by virtue thereof. 2 Chitty's Pl. 601; 1 H. Bla. 49; 1 T. R. 238." Sheppard v. Furniss, 19 Ala. 764. This language and holding has ever since been followed. One of the most recent cases in which it was followed was Davis v. Sanders, 133 Ala. 275, 32 South. 499, and Sanders v. Davis, 153 Ala. 375, 44 South. 979. It was twice considered in this court as to the sufficiency of a count to state a cause of action as for malicious prosecution, and on both appeals the rule as to sufficiency of averments above quoted was declared. On the last appeal in the above case, and referring to the former appeal, it was said:

"It is true that the case of Davis v. Sanders, supra, and others, hold that the absence of an allegation of the issuance of process is fatal to a count for malicious prosecution. Holly v. Carson, 39 Ala. 345. The reason which underlies these decisions is that, in order to constitute malicious prosecution, it is necessary to show that the party was arrested under regular valid judicial proceedings, by virtue of which he might have been legally convicted of the offense charged."

Now, if these are necessary averments, and the statutes and the decisions of this court both say that they are, then the complaint in this case states no cause of action as for a malicious prosecution; and if it should be amended so as to make it sufficient, of course it could not be proven. I do not deny that rights of action in the nature of actions for malicious prosecution do exist in this state, and have always existed, growing out of civil suits or actions, where the defendant's person or property is seized or interfered with or injured, by reason of extraordinary process, such as attachment, garnishment, injunction, etc.; but no right of action now exists, or ever has existed in this state, in consequence of a plaintiff's failure in an ordinary suit commenced by summons and complaint. In such cases the English statutes in force in this state before the adoption of ours, and ours thereafter have provided what the lawmaking powers demand, appropriate, adequate, and the sole remedy of the defendant in such cases. In such cases the statutes provide that the defendant shall have a judgment over against the plaintiff for full costs. I cannot agree to the proposition that this judgment was not intended by the Legislature as full compensation for the wrongs and injuries suffered by the defendant. The Legislature either intended that it should be full compensation as a final adjudication of the wrongs and injuries suffered, or provided that a plaintiff should be twice mulcted in damages, if he failed in his suit. This judgment must be final, or the defendant's cause of action is split, he recovering a part in one judgment, and the remainder in another.

This court has uniformly held these statutes as to costs to be penal. The judgment rendered is as for a penalty, measured by the amount it cost the defendant to defend. In some cases it is small, in others great; it often exceeds the amount sued for, or even what the defendant could recover if he were subsequently allowed to bring an action for malicious prosecution. This judgment is not always for a major amount, as the opinion says, by way of quotation from a Western court. It is certainly enough to deter a solvent plaintiff from bringing a causeless action. All this, however, is aside from the mark; whether this first judgment given the defendant by the statute is all he ought to have, or more or less, is a question for the lawmaking power, and not for the courts. The judgment being in the nature of a penalty, the Legislature could, if it would, fix a given amount, or make it to depend upon the amount of costs, as it does, or double or treble, and the courts would enforce it as written, and not as the courts think it ought to be in each particular case. The lawmaking power could deny a defendant in such cases any right of action to recover either his costs or damages, or the right to a judgment in the first suit for either costs or damages; and when it has acted in the matter it is not for litigants or courts to say that the judgment is not for a sufficient amount, or is

for too great an amount. It being a matter of legislative competency, and action having been taken, the matter is settled, whether it pleases the litigants or courts. This is well and fully stated by the court of New Jersey, which has ever been followed by the Eastern courts, as to territory over which the English statute, as amending the ancient English law once prevailed. In that case it is said:

"Originally when a false claim was made, and vexatious suit carried on, the plaintiff was subject to amercement, but he was not subject to damages in addition. That was considered sufficient and it was not the notion of those days to prevent men from applying to courts for a redress of their grievances. After the amercement fell into disuse, the Legislature interfered and gave costs; but for what purpose? To compensate the party, for his ordinary and regular expenses in his suit, but not for any injury, out of the usual and common course of proceeding, in courts of justice. For such, it did not pretend to apply a remedy. The Legislature no doubt supposed that it had given costs enough to effect the purposes which it had in view. It did not intend that the party should come in, say that the provision was not ample enough, that the costs did not satisfy his expenses; and therefore claim damages by suit, to correct the miscalculation of the Legislature. It was alleged, however in the argument at the bar, that in the court for the trial of small causes, no costs are really received by the defendant for his own benefit, and to pay his expenses; and therefore that he must be entitled to sue where he has been put to cost in that court. The reasoning is fallacious. In this as in every other court the Legislature have fixed what costs shall be given."

So have this court construed our statute. In Northern v. Hanners, 121 Ala. 587, 25 South. 817, 77 Am. St. Rep. 74, there is a full discussion of the statutes, and among other things it is said:

"Under the system of costs and fees as provided by our statutes, cost is not granted by the courts of this state as damages to the successful party, but rather in the nature of a penalty imposed upon the unsuccessful party. By express statute the law of costs must be held to be penal. Code, § 1353; City Council of Montgomery v. Foster, 54 Ala. 63; Dent v. State, 42 Ala. 514."

"Our statute authorizing a judgment for costs gives it to 'the party in whose favor judgment shall be given.' [Clay's Dig. 316, § 20.] A judgment for costs then is an incident of the judgment in the cause, and must be in favor of and against a party to the cause. It is manifest the officers of court are not parties to the suit." Patterson et al. v. Officers, etc., 11 Ala. 740, 742.

It is penal, imposed as punishment of a plaintiff for bringing and prosecuting a causeless suit, or of a defendant for making a false or useless defense. Both are wrong, and both are by the statute punished in the same manner. Why should not a defendant who causelessly or maliciously sets up a false defense be punished as well as a plaintiff who initiates such a suit? Our statute, in part, as to costs, has prevailed as to the territory forming the greater part of this state since 1807, twelve years before the formation of the state. See Westmoreland's Case, 11 Ala. 122.