OVERTON, J.
 

 Plaintiff alleges that defendant acquired the property, No. 2500 Iberville street, in the city of New Orleans, on May 26,1922; that, at the time of defendant’s acquisition thereof, he (plaintiff) was a lessee of the former owner, the lease commencing October 1, 1920, and terminating October 1, 1922, with the privilege of renewal for three, years additional, at a rental of $75 a month; that the burden of this privilege was assumed by defendant, and the privilege itself recognized by him in certain legal proceedings had, but that, notwithstanding the existence of said lease, with the right of renewal recognized, defendant breached the said contract maliciously by instituting and prosecuting against him a suit to dispossess him of the leased premises in which he was conducting a retail grocery business, and, by circulating reports against him, caused him damage. The causes of the damages alleged and the amount of these damages are more particularly set out in the following allegations of plaintiff’s petition, to wit:
 

 “Now your petitioner represents that the defendant, Adolph Shnaider, from the time he acquired the said property, began a systematic compaign to force petitioner to give up the said leased premises, although petitioner had been engaged therein as a retail grocer for many years, and had built up a lucrative business, wherein the weekly receipts aggregated $1,300 on an average, and were steadily increasing, but, due to the fact that the defendant reported publicly that petitioner would give up the place of business, and by a series of harassments, particularly the suit for possession, hereinbefore referred to, he gave the public and the trade generally to understand that petitioner would be forced to vacate and give up his business, and petitioner is informed and so charges on information and belief that the underlying purpose was to rent the premises to a chain store company at an increased rental. That the filing and conduct of this suit and the accompanying publicity, together with the inability of your petitioner to purchase in wholesale quantities, as he had been accustomed, caused him serious losses in his business, which continued from the time defendant acquired the property down to the time that the Supreme Court finally decided the suit for possession in favor of petitioner on June 30,1923.”
 

 “Petitioner represents that the average gross sales before the acquisition by the defendant was, as stated, $1,300 weekly, but fell off to about $1,000 weekly, due to the causes set out in the foregoing article, causing petitioner • a net loss of 20 per cent., the average profit, making a total of $60 weekly, up to June 30, 1923, or a total of $2,640, together with the further sum of $300 as, attorney’s fees made necessary in the defense of the said suit for possession, this being the charge of the attorney for petitioner therein, or a grand total of $2,940.”
 

 Plaintiff also alleges that the suit for possession, which, we may add, is the one report
 
 *1111
 
 ed in 154 La. 363, 97 So. 491, was instituted and prosecuted by defendant, and that the remaining acts of defendant, complained of, referring to the circulation of the reports, were done by him “in a malicious spirit, and with no intent except to harass petitioner and cause him the loss hereinbefore set out.”
 

 Defendant filed an exception of no cause of action against this petition. The exception was sustained by the trial court, and plaintiff’s suit dismissed. He prosecutes this appeal from the judgment sustaining that, exception. '
 

 It is
 
 held that, where one institutes or prosecutes a suit against another in good faith and with probable cause, the suit not being coupled with conservatory writs, and the plaintiff is finally east in the suit, he is not liable for damages, although the defendant may have been damaged as a result of the suit. Cretin v. Levy, 37 La. Ann. 182; New Orleans Land Co. v. Slattery, 145 La. 256, 82 So. 215. The same is true where a landlord sues his tenant for possession of the property leased, and does so in good faith and with probable cause. Johnson v. Meyer, 36 La. Ann. 333; Hartz v. Stauffer, 163 La. 382, 111 So. 794. However, where one institutes and prosecutes a suit against another of such a nature as may occasion damage to his reputation or property, including a suit by a landlord against his tenaht for the purpose of dispossessing him, and does so maliciously and without probable cause, and the suit occasions damage to the defendant, the defendant, upon the termination of the suit in his favor, is entitled to recover the damages suffered.
 

 While plaintiff alleges that the suit was instituted and prosecuted maliciously, he does not allege that it was instituted or prosecuted without probable cause. Plaintiff may have instituted the suit maliciously, and yet may have had probable cause to institute and prosecute it. An allegation showing that plaintiff acted without probable cause was necessary. 38 O. J. § 26, p. 398 et seq. This is true, even though plaintiff alleges that the prosecution of the suit was a breach of defendant’s obligation, arising from the lease, to maintain him peacefully in possession of the property.
 

 As relates to the report, alleged to have been circulated by defendant that plaintiff would be forced to vacate the premises and give up his business, it does not appear how the circulation of this report caused his business, which was a retail grocery business, to decline, or,' for that matter, how the prosecution of the suit had that effect. It is true that plaintiff alleges that he was unable to purchase in wholesale quantities, but leaves it to conjecture as to why'he was unable to purchase in such quantities. Plaintiff should have made it appear by appropriate allegations, showing ultimate facts, that the damages claimed for the decline in his business were caused proximately by the circulation of the report and the prosecution of the suit.
 

 For these reasons, the judgment appealed from is affirmed.