Earl Y. BICKEL, M. D., Plaintiff,

v.

Lenore V. MACKIE and Roger M. Hibbits, Defendants.

No. C 76–44.

United States District Court, N. D. Iowa, Cedar Rapids Division.

April 4, 1978.

Thomas M. Collins, Richard S. Fry, Cedar Rapids, Iowa, for plaintiff.

William M. Tucker, Iowa City, Iowa, for defendant Roger M. Hibbits.

Lenore V. Mackie, pro se.

Robert M. Wohler, O'Fallon, Mo., for defendant.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on defendant Hibbits' resisted motion for judgment on the pleadings filed November 18, 1977. In addition the court will treat defendant Mackie's pro se answer, which raises legal issues identical to those in Hibbits' motion, as a motion for judgment on the pleadings. Granted.

It is noted at the outset that in considering a motion for judgment on the pleadings all well-pleaded allegations in the non-moving party's pleadings and the reasonable inferences drawn therefrom are taken as true while all contravening assertions by the movant are taken to be false. *Beal v. Missouri R. Co.,* 312 U.S. 45, 51, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir. 1974); *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478 (6th Cir. 1973); *Chicago, Milwaukee, St. Paul & R. R. Co. v. Alva Coal Corp.,* 365 F.2d 49 (7th Cir. 1966); Wright & Miller, Federal Practice and Procedure: Civil § 1368. Where there are material issues of fact a motion for judgment on the pleadings must fail. Wright & Miller, *supra.* The motion may contain certain defenses, including failure to state a claim upon which relief can be granted. FRCP 12(h)(2).

This case arises out of an unsuccessful medical malpractice suit initiated by Lenore V. Mackie acting on advice of her counsel Roger M. Hibbits, against Earl Y. Bickel, plaintiff here, and others. That suit was summarily dismissed January 27, 1975. On September 16, 1976 Dr. Bickel brought this action against Mackie and Hibbits alleging malicious prosecution, abuse of process, negligent practice of law, failure to comply with the Code of Professional Responsibility, and conspiracy to harm him. On July 27, 1977 plaintiff requested permission to amend his complaint to include claims that: (1) the malpractice suit was filed and prosecuted recklessly and with heedless disregard for or indifference to plaintiff's rights; and (2) as a result of said suit plaintiff suffered mental anguish, damage to his professional reputation, and expenditures of time to prepare a defense in reckless disregard of his rights. The amendments were allowed by October 27, 1977 order of this court.

The issues raised by Hibbits with regard to Divisions II and III are identical to those raised by Mackie in her answer which ad-

dresses claims set out in Divisions I, II and III. Therefore the following discussion of Hibbits' defenses *a fortiori* also will apply to Mackie.

With regard to Count 1 of Divisions II and III of the complaint, defendant Hibbits bases his motion for judgment on the pleadings on the grounds that Iowa law requires that special damages be pleaded, they were not pleaded and in fact there were no special damages. He attacks Count 2 of Division II and Count 4 of Division III on the grounds that there is no action a·defendant can bring against plaintiff's attorney based on negligence. Further, defendant states that Counts 3 of Divisions II and III are not properly denominated abuse of process counts, but rather merge with the malicious prosecution charges. Likewise Hibbits contends that neither the Code or Professional Responsibility nor a theory of conspiracy are proper bases for this action. He also claims that plaintiff's theory that a plaintiff's attorney may be liable to defendants for heedless disregard of that defendant's rights is not actionable. And finally defendant asserts that punitive damages cannot be sustained where there is no underlying cause for compensatory damages. These defenses will be discussed seriatim.

### Malicious Prosecution

■ The elements of malicious prosecution are set out in *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976) which requires:

(1) a previous prosecution;

(2) instigation or prosecution thereof by defendant;

(3) termination in favor of plaintiff in the present case;

(4) want of probable cause;

(5) malice in bringing the prosecution;

(6) damages.

*See also Liberty Loan Corporation of Des Moines v. Williams*, 201 N.W.2d 462 (Iowa 1972). In *Liberty Loan* the court expanded the final element by stating that damages to plaintiff must conform to legal standards. 201 N.W.2d at 466. Defendant properly cites *Aalfs v. Aalfs*, 246 Iowa 158, 66 N.W.2d 121, 122–123 (1954) for the proposition that no cause of action will lie "unless there has been an arrest of the person, seizure of the property, or special injury sustained". Special injuries are those caused a defendant not necessarily resulting from all suits prosecuted for like causes of action.

In *Aalfs* the Iowa Supreme Court realized that there was a substantial split among the states as to theories of damages in malicious prosecution cases. The Supreme Court stated:

. . . Briefly, the courts which think an action for malicious prosecution of a civil action should be permitted in all cases reason the law should provide a remedy for every wrong, and a litigant should not be permitted to bring suit with charges of fraud, deceit, or other imputation of improper conduct against the defendant, such charges being knowingly false, malicious and without probable cause, without being required to respond in damages for the harm so wantonly done.

66 N.W.2d at 123.

The Iowa Supreme Court expressly rejected that theory in holding:

The opposing position, which we have adopted and still believe sound, is that the courts should be open to all who think they have a just cause of action, and it would deter many honest litigants from asserting their rights if they knew they were to be penalized by a counter-action for damages based on alleged malice if for any reason they failed in winning their cause.

*Id.* at 123.

■ Plaintiff cites no Iowa cases which redefine damages necessary to sustain a malicious prosecution case. He contends that there is a conflict of law which inexorably leads to application of Missouri law. We reject this assertion for two reasons.

First, the original malpractice suit was transferred from federal court in Missouri to this court because original venue was improper. The transaction took place in Iowa and the defendants were Iowa citizens. Second, this suit was instituted in Iowa which has a special interest in determining the relationship of parties involved in suits arising out of conduct in Iowa. Iowa specifically has interests in keeping its courts open to potential litigants and not having its courts jammed with vast numbers of retaliatory suits. *See Aalfs v. Aalfs, supra* at 124. It would appear that Iowa has the most significant contacts and interests in this case. *See Lindstrom v. Aetna Life Ins. Co.,* 203 N.W.2d 623 (Iowa 1973); *Fabricus v. Horgen,* 257 Iowa 268, 132 N.W.2d 410, 414–415 (1965); *Flogel v. Flogel,* 257 Iowa 547, 133 N.W.2d 907 (1965); *Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968).

Plaintiff cites Prosser to advance his theory that Iowa's special damages require-

ment is outdated, and it may be. However, Iowa and some 16 other jurisdictions follow this rule.[1]

In a society in which litigation has become a national pastime it may seem obvious that there should be a remedy for the victim of frivolous litigation where that defendant was neither seized, had his property seized or sustained special injuries. *See* 52 Am.Jur.2d, Malicious Prosecution § 11. This is particularly so when the original litigation casts aspersions on a defendant's professional reputation. *See Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 847 (9th Cir. 1976). But so far as this court can tell, Iowa does not recognize reputational harm as a basis for a malicious prosecution action. Plaintiff seems to be calling for a change in the Iowa rule.

In *O'Toole v. Franklin,* 279 Or. 513, 569 P.2d 561 (1977), a case similar to the one at bar, Justice Linde traces the tensions between guaranteeing access to the courts

---

1. Justice Linde, writing for the Oregon Supreme Court recently listed the states which follow the special damages rule and those which do not. *O'Toole v. Franklin,* 279 Or. 513, 569 P.2d 561, 564 (1977). Those following the rule are:

    *Davis v. Boyle Bros.,* D.C.Mun.App., 73 A.2d 517 (1950); *Price v. Fidelity Trust,* 74 Ga.App. 836, 41 S.E.2d 614 (1947); *Schwartz v. Schwartz,* 366 Ill. 247, 8 N.E.2d 668, 112 A.L.R. 325 (1937); *Wetmore v. Mellinger,* 64 Iowa 741, 18 N.W. 870 (1884); *Harter v. Lewis Stores, Inc.,* 240 S.W.2d 86 (Ky.1951); *North Point Const. Co. v. Sagner,* 185 Md. 200, 44 A.2d 441 (1945); *Potts v. Imlay,* 4 N.J.L. 377 (1816); *Johnson v. Walker-Smith Co.,* 47 N.M. 310, 142 P.2d 546 (1943); *Burt v. Smith,* 181 N.Y. 1, 73 N.E. 495 (1905); *Pittsburgh J. E. & E. R. Co. v. Wakefield Hardware Co.,* 138 N.C. 174, 50 S.E. 571 (1905); *Cincinnati Daily Tribune Co. v. Bruck,* 61 Ohio St. 489, 56 N.E. 198 (1900); *Mitchell v. Silver Lake Lodge,* 29 Or. 294, 45 P. 798 (1896); *Carnation Lumber Co. v. McKenney,* 224 Or. 541, 356 P.2d 932 (1960); *Norcross v. Otis Bros. & Co.,* 152 Pa. 481, 25 A. 575 (1893); *Ring v. Ring,* 102 R.I. 112, 228 A.2d 582 (1967); *Smith v. Adams,* 27 Tex. 28 (1863); *Petrich v. McDonald,* 44 Wash.2d 211, 266 P.2d 1047 (1954); *Myhre v. Hessey,* 242 Wis. 638, 9 N.W.2d 106, 150 A.L.R. 889 (1943).

    Those rejecting the rule are:

    *Peerson v. Ashcraft Cotton Mills,* 201 Ala. 348, 78 So. 204 (1917); *Ackerman v. Kaufman,* 41 Ariz. 110, 15 P.2d 966 (1932); *Leek v. Brasfield,* 226 Ark. 316, 290 S.W.2d 632 (1956); *Eastin v. Bank of Stockton,* 66 Cal. 123, 4 P. 1106 (1884); *Slee v. Simpson,* 91 Colo. 461, 15 P.2d 1084, 85 A.L.R. 412 (1932); *Calvo v. Bartolotta,* 112 Conn. 396, 152 A. 311 (1930); *Tatum Bros. Real Estate & Inv. Co. v. Watson,* 92 Fla. 278, 109 So. 623 (1926); *McCardle v. McGinley,* 86 Ind. 538 (1882); *Carbondale Inv. Co. v. Burdick,* 67 Kan. 329, 72 P. 781 (1903); *Graffagnini v. Schnaider,* 164 La. 1108, 115 So. 287 (1927); *White v. Dingley,* 4 Mass. 433 (1808); *Brand v. Hinchman,* 68 Mich. 590, 36 N.W. 664 (1888); *O'Neill v. Johnson,* 53 Minn. 439, 55 N.W. 601 (1893); *Harvill v. Tabor,* 240 Miss. 750, 128 So.2d 863 (1961); *Brady v. Ervin,* 48 Mo. 533 (1871); *McCormick Harvesting Mach. Co. v. Willan,* 63 Neb. 391, 88 N.W. 497 (1901); *Kolka v. Jones,* 6 N.D. 461, 71 N.W. 558 (1897); *Johnson v. Moser,* 181 Okl. 75, 72 P.2d 715 (1937); *Cisson v. Pickens Sav. & Loan Ass'n,* 258 S.C. 37, 186 S.E.2d 822 (1972); *Teesdale v. Liebschwager,* 42 S.D. 323, 174 N.W. 620 (1919); *Lipscomb v. Shofner,* 96 Tenn. 112, 33 S.W. 818 (1896); *Closson v. Staples,* 42 Vt. 209 (1869); *Van Hunter v. Beckley Newspapers Corp.,* 129 W.Va. 302, 40 S.E.2d 332 (1946).

and protecting persons from vexatious suits which may involve substantial outlays of time and money. 569 P.2d at 564. Noting that the "special interest" rule is not immune to judicial change, he states:

> But the legislative process is not inappropriate, given adequate time and preparation, for studying and resolving the competing and the common interests at stake in private law  .   .   . .

*Id.* at 565.

Other recent cases show a hesitancy to hold an attorney, often acting under the pressure of an impending statutory deadline, liable for representing a client in what turned out to be a frivolous suit. In *Drago v. Buonagurio,* 89 Misc.2d 171, 391 N.Y.S.2d 61 (Sup.Ct.1977) a physician sued an attorney and others for malicious prosecution, abuse of process and negligence after they unsuccessfully sued him for malpractice. The court found that even though the doctor who was sued for malpractice never treated the plaintiff's decedent, no suit for malicious prosecution arose. 391 N.Y.S.2d at 62.

This hesitancy, the explicit holdings of the Iowa Supreme Court, and the susceptibility of the Iowa rule to legislative reform reinforces this court's position that plaintiff has failed to state a cause of action based on malicious prosecution.

### Negligence

Count 2 of Division II and Count 4 of Division III state claims against Hibbits based on negligence in advising the Mackies with regard to commencing and prosecuting the malpractice suit. Plaintiff correctly notes and defendant concedes the general trend toward relaxation of privity requirements where third parties may rely to their detriment on the conduct of a professional. Thus, in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa, 1969) the Iowa Supreme Court stated:

> We know of no good reason why accountants should not accept the legal responsibility to known third parties who reasonably rely upon financial statements prepared and submitted by them.

170 N.W.2d at 401.

The court went on to say:

> Thus, it was felt the test to be adopted is whether the third party to whom the accountant owes a duty of care is actually foreseen and a member of a limited class of persons contemplated. We agree, and in so doing, recognize that the same rule may be applicable in other recognized professions, such as abstracters and attorneys.   .   .   .

*Id.* at 402.

However, in the present case there is no question of reliance of third parties who are adversaries in judicial proceedings. The attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct.

Plaintiff correctly cites *Freese v. Lemmon,* 210 N.W.2d 576 (Iowa, 1973) for the proposition that a professional can be held liable by third parties injured as a result of the professional's negligence. However that case does not involve an attorney or the adversary process. In *Freese,* a doctor was sued for negligence in failing to employ recognized procedures in determining that his patient was susceptible to seizures and warning him that he should not drive an automobile. As a result of this negligence, it was alleged that the doctor's patient suffered a seizure resulting in an automobile accident and injury to plaintiff. The district court dismissed for failure to state a claim and the Iowa Supreme Court reversed. This case does further the trend toward abandonment of the privity concept in Iowa. However, it does not extend lia-

bility to attorneys who negligently commence and prosecute a case at the behest of their clients. It may be said that a driver relies on other drivers being reasonably fit to drive. Where a doctor knows his patient is not reasonably fit to drive he has a duty to patient as well as the driving public to reasonably warn his patient. *See also Kaiser v. Suburban Transportation System,* 65 Wash.2d 461, 398 P.2d 14 (1965). There is no analagous duty flowing between attorneys and opposing parties.

The California Court of Appeals recognized this distinction in *Norton v. Hines,* 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975). The court found that the attorneys were negligent in advising their client to commence and prosecute suit after full disclosure of the facts and that the attorneys, so acting, could foresee or should have been able to foresee that their negligence would cause damages to the defendant. Yet it held that a negligence action by the original defendant would not lie. 49 Cal.App.3d at 921–923, 123 Cal.Rptr. 237.[2] Attorneys may be liable to third parties for their conduct, but not in a case like that at bar. *See also Spencer v. Burglass,* 337 So.2d 596 (La., 1976).

■ Negligence is an improper standard upon which to base liability of an attorney to an adverse party. The Court agrees with defendant that malicious prosecution is the proper cause of action but is insufficiently pleaded in this case.

### Abuse of Process

The Iowa Supreme Court recently defined abuse of process in *Sarvold v. Dodson,* supra at 449, citing *Hyde Construction Co., Inc. v. Koehring Company,* 387 F.Supp. 702, 712–713 (S.D.Miss.1974):

"Abuse of process, . . ., is the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, . . . The improper use which is the essence of the tort is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself, and is, in Prosser's words, 'a form of extortion' in which a lawfully used process is perverted to an unlawful use. (Citation)."

In clarifying the often confused and confusing nature of "abuse of process" the court continued:

"Malicious use of process. The fundamental distinction between malicious use and malicious abuse of process is that the first is an employment of process for its ostensible purpose, although without probable cause, whereas the second is employment of process for a purpose not contemplated by law. Another distinction is that, in case of malicious use, it must be shown that the action in which the process was used has terminated favorably to plaintiff in the suit at bar, whereas this is unnecessary in an action for malicious abuse." 72 C.J.S. Process § 119, p. 1188.

Prosser states:

Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.

Prosser, Law of Torts, 4th Ed. § 121 (1972)

Abuse of process requires an improper purpose which "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself . . . ."

*Id.* at 857.

The *Sarvold* court cited *Jones v. Iowa State Highway Commission,* 207 N.W.2d 1, 4 (Iowa 1973) for the proposition that:

---

**2.** A recent Illinois Second District Appellate Court decision held that a physician's sole remedy against an attorney for bringing a baseless malpractice suit is a suit for malicious prosecution. The court specifically rejected a claim that the attorney had a duty to the physician to use due care. *Lyddon v. Shaw,* 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (1978).

One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.

*Sarvold v. Dodson, supra* at 448.

The issue presented here is whether an action for abuse of process lies where it is alleged that the plaintiffs in the malpractice suit used process in a baseless action to attempt to force settlement and thus harm defendant, Bickel. Bickel, plaintiff here, claims that defendants were using the judicial system to accomplish something that could not otherwise be accomplished, that is, to extort a settlement based on a totally frivolous suit. Defendant Hibbits contends that "abuse of process" cannot be maintained where the process which was employed was for no other purpose than that intended, that is, to attempt to redress alleged damages to his client, whether through trial or settlement.

■ Generally abuse of process has been held to require a purpose to secure a collateral benefit not directly related to the process. Criminal prosecution or garnishment to collect a debt are frequent examples. *See Prosser,* § 121. Here we have suit for damages, which even if frivolous as pleaded, has the purpose of settlement which is includable in the goals of proper process. Plaintiff claims the remedy for a strike suit is a claim for abuse of process. The court disagrees. Where the claim is that defendant commenced and prosecuted a suit without probable cause, the proper cause of action is for malicious prosecution, a cause which fails under the foregoing discussion.

### Code of Professional Responsibility

Count four of Division II complains that defendant Hibbits owed a duty to plaintiff Bickel to comply with the rules of civil procedure relating to certifying that a suit is brought in good faith (FRCP 11) and the Code of Professional Responsibility for Lawyers prescribing adequate preparation and proscribing participation in suits to harass or maliciously injure another. Plaintiff analogizes the rules and code to drivers rules of the road which if violated constitute negligence per se.

■ The court disagrees with this theory. Violation of the Code of Professional Ethics is not tantamount to a tortious act, particularly with regard to liability to a non-client. Though Canon 7 does speak of a duty "to the legal system" to stay within the bounds of the law when representing clients, it does not create a private cause of action. Plaintiff cites no cases to support his claim that it does create such a cause. There are several cases from other jurisdictions which state that it does not. *See Drago v. Buonagurio,* supra 89 Misc.2d 171, 391 N.Y.S.2d at 62; *Spencer v. Burglass,* supra; *Lyddon v. Shaw,* supra; Cf. *Commonwealth v. Pfaff,* 233 Pa.Super. 153, 335 A.2d 751, 755 (1975). And even if it did establish a minimal standard of conduct below which lies negligence per se, it has already been noted that no action for negligence exists in the case at bar.

In addition the preliminary statement of the Code states in part:

The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.

The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. Within the framework of fair trial, the Disciplinary Rules should be uniformly applied to all lawyers, regardless of the nature of their professional activities. The Code makes no attempt to prescribe either discipli-

nary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct. . .

### Conspiracy

■ Where the plaintiff fails to state a claim upon which relief can be granted, a count based on conspiracy must also fail. As stated above, plaintiff's attempt to state a cause of action grounded in abuse of process fails. Thus his claims of conspiracy to abuse process must also fail.

### Reckless and Heedless Disregard of Defendant's Rights

■ For the reasons set out in the sections discussing negligence and the Code of Professional Responsibility, it is apparent that an attorney cannot be held liable for heedless disregard or indifference or the consequences to an adverse party resulting from his/her client's suit except when that disregard amounts to malicious prosecution or where there is reliance or some specific duty. Several cases already cited support this position. *See Drago v. Buonagurio,* supra, 89 Misc.2d 171, 391 N.Y.S.2d at 62; *Spencer v. Burglass,* supra at 599; *Lyddon v. Shaw,* supra.

### Punitive Damages

The foregoing discussion makes any consideration of punitive damages moot.

### Conclusion

■ The issues analyzed in this order lead to the anomalous and possibly unsatisfying conclusion that in Iowa there may be no remedy by which defendants can vindicate themselves after being subjected to strike suits which in this state do not constitute malicious prosecution. The paucity of Iowa authority and the policy in favor of encouraging primary access to the courts and discouraging retaliation by defendants against plaintiffs' attorneys creates a seeming gap in the law which this court hesitates to fill. We note the rapidly expanding number of cases similar to that at bar which seem to be a response to the burgeoning malpractice caseload. This area of law is properly within the purview of the state courts and legislature. While this court is bound to apply state law, it is not bound to predict state law development. *McIntyre v. Everest & Jennings, Inc.,* 575 F.2d 155 (8th Cir. 1978); *Edwards v. Sears, Roebuck and Company,* 512 F.2d 276, 291 (5th Cir. 1975).

It is therefore

ORDERED

1. Granted.

2. All remaining motions and requests are denied.