[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
INTRODUCTION
This action arises out of a contested divorce proceeding before John E. Fuyat, former Associate Justice of the Rhode Island Family Court, that allegedly took place when the judge was soliciting and receiving loans from lawyers, including lawyers involved in the divorce proceeding. Plaintiff Peter H. Hurley, a party to the divorce action involving his wife, claims, interalia, that defendant Fuyat acted negligently in soliciting and accepting loans from defendants Stephen A. Gordon, counsel to plaintiff's wife in the divorce action, and James D. Levitt, defendant Gordon's law partner, and by failing to disclose the loans to plaintiff and the appropriate disciplinary authorities during the pendency of the Hurley divorce action. In addition, plaintiff Hurley claims that defendants Gordon and Levitt acted negligently in loaning money to defendant Fuyat during the divorce proceeding and by failing to disclose the loans to plaintiff and the appropriate disciplinary authorities. Plaintiff Hurley seeks compensatory and punitive damages against defendants for a "meaningless, futile and tainted court proceeding" that he attributes to their misconduct.
Defendant Fuyat has moved to dismiss the complaint, pursuant to R.I. Super. Ct. R. Civ. P. 12(b)(6), arguing that it is barred by the doctrine of judicial immunity. Defendants Gordon and Levitt have moved to dismiss the complaint, pursuant to Rules 12(b)(6) and 56, respectively, arguing that they had no duty to protect the interests of plaintiff Hurley, as an adverse litigant, by either declining to make the loans or disclosing their existence. In the absence of a legal duty running from them to plaintiff Hurley, they contend that his negligence claims against them must fail as a matter of law. After extensive briefing and oral argument, these motions are ripe for decision by this Court.
BACKGROUND
The facts pertinent to defendants' motions are drawn from the allegations of plaintiff's complaint. Plaintiff Peter H. Hurley was a party to a contested divorce action involving his wife, Angela S. Hurley, that was conducted by defendant John E. Fuyat, a former Associate Justice of the Rhode Island Family Court, during 1988 and 1989. Complaint, paragraphs 1, 2, 8, 21. Defendant Stephen A. Gordon represented the interests of Ilse Von Seckendorff, Angela Hurley's mother and an intervenor in the divorce action, whose interests were adverse to plaintiff Hurley. Complaint, paragraph 9. Defendant James D. Levitt was defendant Gordon's law partner at the time. Complaint, paragraphs 3, 4.
Plaintiff Hurley has sued defendants Fuyat, Gordon and Levitt individually in negligence seeking compensatory and punitive damages arising out of alleged secret loan activity between the former justice and the lawyers that occurred during the pendency of the Hurley divorce action. As to defendant Fuyat, plaintiff Hurley avers that by his acts of misconduct described in the complaint (to wit: soliciting and receiving loans and favors from defendants Gordon and Levitt during the pendency of the Hurley
divorce action without notifying plaintiff Hurley or the appropriate disciplinary authorities of that activity), defendant Fuyat's entire conduct of the Hurley divorce was not a judicial function and was taken in the complete absence of all jurisdiction. Complaint, paragraph 6. He alleges that, while conducting a trial in a contested divorce action is a judicial function, defendant Fuyat's conduct of the Hurley trial was not a judicial function because his personal solicitation and receipt of loans and favors from attorneys involved in the Hurley
divorce case negated the "judicial" nature of the proceeding abinitio. Complaint, paragraph 7.
Plaintiff Hurley alleges that defendants Fuyat, Gordon and Levitt had a duty to exercise ordinary and reasonable professional care, as attorneys and officers of the court, to protect the integrity of the court process and to protect all of the litigants, including plaintiff. Complaint, paragraphs 11, 15, 20, 25, 30, 34. Plaintiff Hurley also alleges that defendants breached their purported duties in various ways by soliciting, receiving, giving and/or arranging for loans and favors from defendants Gordon and Levitt to defendant Fuyat during the pendency of the Hurley divorce action. Complaint, paragraphs 12, 18, 21, 24, 27, 28, 32, 41.
Plaintiff Hurley further alleges that defendants knew or should have known that such conduct was "per se improper," complaint, paragraphs 13, 16, 35, 37, 39, and that such conduct "would corrupt and irreparably taint the integrity of the underlying divorce proceeding," complaint, paragraphs 17, 26, 35-40. Plaintiff Hurley also alleges that defendants were obligated to inform or warn plaintiff and disciplinary counsel of the transactions. Complaint, paragraphs 14, 17, 36, 38, 40. Plaintiff Hurley finally alleges that he suffered financial loss as a result of the defendants' conduct in that he incurred "legal fees and litigation costs wasted in a meaningless, futile and tainted divorce proceeding." Complaint, paragraphs 22, 42.
STANDARD OF REVIEW
A dismissal is appropriate under Rule 12(b)(6) when the allegations show that, on the face of the complaint, there is some insuperable bar to relief. Goldstein v. Rhode IslandHospital Trust National Bank, 110 R.I. 580, 296 A.2d 112 (1972). A complaint is insufficient if it is clear beyond a reasonable doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of his or her claim for relief. Bragg v. Warwick Shoppers' World, Inc., 102 R.I. 8,227 A.2d 582 (1967). In reviewing the complaint, all of the allegations must be accepted as true and viewed in the light most favorable to the plaintiff, with all doubts resolved in plaintiff's favor. Ellis v. Rhode Island Public TransitAuthority, 586 A.2d 1055 (R.I. 1991).
The question of whether a complaint for civil damages against a judge is barred by the doctrine of judicial immunity is appropriate for resolution by way of a Rule 12(b)(6) motion to dismiss. See, e.g., Mireles v. Waco, 502 U.S. , 112 S.Ct. 286 (1991) (Rule 12(b)(6)); see also Roberts v. Alprin,443 A.2d 433 (R.I. 1982) (summary judgment). Similarly, a dispositive motion is a logical vehicle for resolving the question of whether a legal duty runs from the defendant to the plaintiff that can give rise to actionable negligence. See, e.g., Bank's v. Bowen'sLanding Corp., 522 A.2d 1222 (R.I. 1987); Barratt v.Burlingham, 492 A.2d 1219, 1220 (R.I. 1985); D'Ambra v. UnitedStates, 114 R.I. 643, 649, 338 A.2d 524, 527 (1975); Radigan v.W.J. Halloran Co., 97 R.I. 122, 196 A.2d 160 (1960).*
DEFENDANT FUYAT'S MOTION TO DISMISS
A historical line of precedents from the United States Supreme Court establishes that a judge is generally immune from a suit for money damages. See, e.g., Mireles v. Waco, 502 U.S. , 112 S.Ct. 286 (1991) (suit barred against state court judge who allegedly authorized use of excessive force against attorney);Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183 (1980) (state court judge immune from suit for allegedly accepting bribe and conspiring with others to issue an injunction); Stump v.Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978) (civil damages action barred against state court judge who allegedly granted anex parte petition by a mother to sterilize her "somewhat retarded" daughter without notice to the daughter or the appointment of a guardian ad litem); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213 (1967) (municipal police justice immune from suit by defendants challenging the constitutionality of their criminal convictions); Bradley v. Fisher, 13 Wall. 335 (1872) (suit barred against judge who allegedly acted maliciously and corruptly to disbar an attorney for being in contempt of court);see generally Forrester v. White, 484 U.S. 219, 108 S.Ct. 538 (1988); Cleavinger v. Saxner, 474 U.S. 193, 106 S.Ct. 496 (1985); Supreme Court of Virginia v. Consumers Union of UnitedStates, Inc., 446 U.S. 719, 100 S.Ct. 1967 (1980); Butz v.Economou, 488 U.S. 478, 98 S.Ct. 2894 (1978).
This doctrine of judicial immunity finds its parallel in settled decisions of the Rhode Island Supreme Court. See, e.g.,Roberts v. Alprin, 443 A.2d 433 (R.I. 1982) (state court judge immune from civil damages action for allegedly causing arrest of courtroom spectator without warrant or probable cause that gave rise to the conversion of her personal property); seegenerally Calhoun v. City of Providence, 390 A.2d 350 (R.I. 1978); Laird v. Chrysler Corp., 460 A.2d 425 (R.I. 1983);Hartt v. Hartt, 397 A.2d 518 (R.I. 1979). The federal courts also have relied consistently on the doctrine of judicial immunity to bar civil damage suits against Rhode Island state court judges. See, e.g., Hurley v. Fuyat, C.A. No. 92-5082 (D.R.I. March 23, 1993) (parallel federal court action barring suit against former justice Fuyat on grounds of judicial immunity); Cok v. Cosentino, 876 F.2d 1 (1st Cir. 1989) (barring civil damages suit against state court judge who allegedly conspired with guardian ad litem and conservator to deprive wife of assets in divorce proceeding); Larson v.Gallogly, 361 F. Supp. 305 (D.R.I. 1973) (state court judge immune from suit for allegedly denying divorce petition for plaintiff's failure to meet Rhode Island's two-year residency requirement in violation of plaintiff's constitutional rights),vacated 420 U.S. 904 (1973) (vacated for mootness).
Barring suit against a judge may seem unfair or unjust to a litigant who feels justifiably aggrieved by the judge's conduct. Yet "it is a general principle of the highest importance to the proper administration of justice that a judicial officer in exercising the authority vested in him, shall be free to act upon his convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 13 Wall. at 347.
Judicial immunity, like that granted governmental officials, bars not only the ultimate assessment of damages in litigation but also the suit itself. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Judges are immune from civil liability for their judicial acts, "even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. at 354 (quotingBradley v. Fisher, 13 Wall. at 351). As our Rhode Island Supreme Court has recognized:
 [The immunity] "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (Citations omitted). It is the judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.
Calhoun v. City of Providence, 390 A.2d 350, 356 (R.I. 1978) (quoting Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. at 1218). "Such judicial independence is at the very core of our judicial system, and courts have guarded it jealously." Id.
Judicial immunity may be abrogated in two discrete circumstances. Mireles v. Waco, 502 U.S. at , 112 S.Ct. at 288. First, "a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity." Id. (citing Forrester v. White, 484 U.S. at 227-29, 108 S.Ct. at 544-45; Stump v. Sparkman, 435 U.S. at 360, 98 S.Ct. at 1106). Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citing Stump v. Sparkman, 435 U.S. at 356-57, 98 S.Ct. at 1104-05; Bradley v. Fisher, 13 Wall. at 351)).
In determining whether an act by a judge is "judicial" in character, "the nature of the act must be considered to determine whether it is a function normally performed by a judge." Mirelesv. Waco, 502 U.S. at , 112 S.Ct. at 288 (quoting Stump v.Sparkman, 435 U.S. at 362, 98 S.Ct. at 1108). The pertinent inquiry is the "nature" and "function" of the act, not the "act itself." Mireles v. Waco, 502 U.S. at , 112 S.Ct. at 288;Stump v. Sparkman, 435 U.S. at 362, 98 S.Ct. at 1108. The focus must be on the "particular act's relation to a general function normally performed by a judge." Mireles v. Waco, 502 U.S. at, 112 S.Ct. at 289. In addition, consideration must be given to the expectations of the parties to determine "whether they dealt with the judge in his [or her] judicial capacity." Id.
Plaintiff Hurley acknowledges the legal parameters of the doctrine of judicial immunity as iterated in this decision. He contends, however, that the doctrine is inapplicable here because "Fuyat's entire conduct of the Hurley divorce was not a judicial function." Complaint, paragraph 6. He argues that "hearing a divorce proceeding under the circumstances alleged in the complaint is not a `function normally performed by a judge.'" Memorandum in Support of Plaintiff's Objection to Defendant Fuyat's Motion to Dismiss at 10 (quoting Mireles v. Waco, 502 U.S. at 112 S.Ct. at 288).
Plaintiff Hurley also suggests in his complaint that the doctrine of judicial immunity is inapposite here because defendant Fuyat acted without jurisdiction. He alleges that "Fuyat's entire conduct of the Hurley divorce was taken in the complete absence of jurisdiction." Complaint, paragraph 6. Notwithstanding this allegation, however, plaintiff Hurley has conceded, in response to defendant Fuyat's motion to dismiss, that defendant Fuyat, as a former Associate Justice of the Family Court, had subject matter jurisdiction over the Hurley divorce action and that he cannot defeat judicial immunity by arguing that defendant Fuyat acted without jurisdiction. Memorandum in Support of Plaintiff's Objection to Defendant Fuyat's Motion to Dismiss at 9, fn 2. This Court's determination of whether judicial immunity bars plaintiff's complaint against the former justice will be limited, therefore, to a consideration of whether defendant Fuyat acted in his judicial capacity.
In determining whether defendant Fuyat's conduct should be characterized as judicial or non-judicial, it is first necessary to define the act of the former judge of which plaintiff Hurley complains. The nature of the act then must be considered to determine whether it is a function normally performed by a judge.
Focusing on the conduct of former justice Fuyat in soliciting and receiving loans from lawyers — including attorneys involved directly and indirectly in a contested matter over which the judge presided — has great superficial appeal in the instant debate over judicial immunity. It is hard to see how such conduct, when viewed in isolation, could be characterized as "a function normally performed by a judge."
Yet the act of which plaintiff Hurley complains is not simply that of the former justice's solicitation and receipt of loans from attorneys involved directly or indirectly in a contested matter over which he presided. Indeed, such activity, while highly improper, causes plaintiff Hurley no injury unless and until it infects the judicial proceeding to which he is a party. Plaintiff Hurley seeks instead to hold defendant Fuyat liable for his act of presiding over the Hurley divorce action at a time when he was secretly soliciting and receiving loans and favors from the lawyer counselling plaintiff's adversary and his law partner. See Complaint, paragraph 6.
The act of presiding over a contested divorce proceeding is quintessentially a judicial function. Defendant Fuyat's undisclosed solicitation and receipt of loans and favors from counsel to one party to that proceeding and his law partner, while certainly not to be countenanced, cannot convert that judicial divorce proceeding into non-judicial conduct. As such, plaintiff Hurley's complaint against defendant Fuyat for performing his judicial function improperly, i.e., by soliciting and receiving loans and favors from counsel to one of the parties to the contested divorce proceeding over which he presided and that lawyer's partner, must be met with the bar of judicial immunity. See Hurley v. Fuyat, C.A. No. 92-5082 (D.R.I. March 23, 1993) (dismissing a related federal court action by plaintiff Hurley against defendant Fuyat on grounds of judicial immunity). See also Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183 (1980) (invoking doctrine of judicial immunity to affirm trial court's dismissal of civil rights action against state court judge who allegedly was bribed to issue an injunction).
To rule otherwise could subject judges to vexatious law suits by disgruntled litigants claiming that their proceedings were tainted by the actions of corrupt or biased judges. Exposure to such litigation could discourage judicial service and compromise the freedom to decide without fear of reprisal that is the sinequa non of an independent judiciary.
While the dismissal of this action against defendant Fuyat is thus necessitated by the overriding public interest in judicial autonomy that is the core of the judicial immunity doctrine, it should not be construed in any way as a ratification of defendant Fuyat's conduct. There is no question that a judge's handling of a divorce proceeding, whether actively or passively, when he is soliciting and accepting loans and legal advice from lawyers involved directly or indirectly in the contest is highly improper — particularly when that activity is concealed from the opposing party and his counsel. Indeed, it is the gross ethical improprieties occasioned by former justice Fuyat's loan activities that gave rise to the Rhode island Supreme Court's condemnation of his conduct and ultimately to his resignation from the bench and his disbarment. See Lisi v. SeveralAttorneys, 596 A.2d 313 (R.I. 1991); In Re Fuyat,578 A.2d 1387 (R.I. 1990); Carter v. Fuyat, 571 A.2d 1126 (R.I. 1990).
Moreover, denying plaintiff Hurley the right to sue the former justice in negligence does not deny him a forum within which to pursue his claims. Plaintiff Hurley's chief complaint is that defendant Fuyat's misconduct resulted in a "meaningless, futile and tainted court proceeding." To the extent that plaintiff Hurley protests the judicial disposition of his divorce case, he is free to appeal. A reviewing court could determine whether the contested divorce proceeding was "tainted," as he claims, and remedy the taint, if any there be. If, instead, plaintiff Hurley's chief complaint is with the ethical misconduct of the former judge and others, he may pursue a claim with the appropriate disciplinary authorities and seek disciplinary sanctions. See Supreme Court Rules of Professional Conduct; Supreme Court Rules (Art. III).
THE DISPOSITIVE MOTIONS OF DEFENDANTS GORDON AND LEVITT
A.
The ethical obligations of lawyers are chiseled in the codes of conduct that guide the profession and regulate the behavior of its members. In determining the contours of the ethical landscape relevant to this case, reference must be made to the old Disciplinary Rules of the Code of Professional Responsibility that were in effect until November 15, 1988 and the newer Supreme Court Rules of Professional Conduct which immediately superceded them.
Both the old and the new rules explicitly prohibit a lawyer from making loans to a judge. See, e.g., DR 7-110 (prohibiting a lawyer from giving or lending anything of value to a judge); Rule 3.5 (prohibiting a lawyer from seeking to influence a judge by means prohibited by law); Rule 8.4(f) (forbidding a lawyer from knowingly assisting a judge in conduct that is a violation of applicable rules of judicial conduct); Rule 21, Canons of Judicial Ethics (prohibiting a judge from receiving loans from litigants, lawyers or others whose interests are likely to be submitted to the judge for judgment). If a judge wrongfully solicits a loan from a lawyer, the lawyer is obligated to refuse the request and report the judicial misconduct to the appropriate disciplinary authorities. Id.; see, e.g., DR 1-103 (requiring a lawyer possessing knowledge of another lawyer's conduct that is prejudicial to the administration of justice to report the violative conduct to a tribunal or other authority empowered to investigate or act upon such violation); Rule 8.3(a)(b) (requiring lawyers to report to the appropriate professional authorities the professional misconduct of judges and other lawyers).
The rules also expressly prohibit a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice." DR-102 (A)(5); Rule 8.4(d). This sweeping edict is not only broad enough to encompass the specific prohibition against lawyers making loans to judges that is encompassed elsewhere in the rules but also implicitly forbids a lawyer from appearing before a judge to whom he or she has loaned money, particularly where the existence of the loan has not been disclosed.
Any party (including a third party adverse to a lawyer in litigation) who is aggrieved by a lawyer's misconduct can complain to the Disciplinary Board of the Rhode Island Supreme Court. See generally Supreme Court Rules (Art. III): Disciplinary Procedure for Attorneys. A lawyer's failure to comply with the obligations or prohibitions imposed by the rules can lead to disciplinary action and the imposition of sanctions (including disbarment, suspension, public censure or an order for restitution, community service, pro bono legal service, substance abuse treatment or other counselling). See Supreme Court Rules of Professional Conduct, Scope; Rules 2-6, Supreme Court Rules (Art. III): Disciplinary Procedure for Attorneys.
Indeed, the conduct of defendant Gordon, which included giving defendant Fuyat checks in exchange for personal checks from the former justice that were not to be cashed until defendant Fuyat had funds to cover them, arranging loans for defendant Fuyat, failing to report the loan activity and referring the former judge to his law partner for legal services (all while he had a matter in trial before the judge), led to disciplinary action against him. The Rhode Island Supreme Court ultimately found him in violation, inter alia, of DR 1-102(A)(5), DR 1-103(A), DR 7-110(A) and Rule 8.4(d) and suspended him from the practice of law in the state for a period of not less than one year, commencing September 1, 1991. Lisi v.Several Attorneys, 596 A.2d 313, 320-21 (R.I. 1991).
Similarly, the conduct of defendant Levitt, which included representing former justice Fuyat in a legal matter while his partner, defendant Gordon, was conducting a trial before the judge and failing to object to a loan to defendant Fuyat by a company in which defendant Levitt had a financial interest, led to disciplinary action against him. The Rhode Island Supreme Court ultimately found him in violation, inter alia, of DR 1-102(A) and Rule 8.4(d) and suspended him from the practice of law in the state for a period of not less than six months, commencing September 1, 1991. Id. at 320.
The fact that these defendants committed serious ethical violations, however, does not subject them to automatic civil liability. To the contrary, the Rules of Professional Conduct state as follows:
 Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.
Supreme Court Rules of Professional Conduct, Scope. Similarly, the earlier Code of Professional Responsibility cautioned that "the Code . . . does not undertake to define standards for civil liability of lawyers for professional conduct." Supreme Court Rule 47, Code of Professional Responsibility, Preliminary Statement.
The rules thus impose duties upon lawyers that run to the public, the legal profession and the legal system; nowhere in the rules of conduct is there delineated any duty running from a lawyer to an adverse litigant. The rules provide a non-judicial forum for adjudicating ethical violations in which sanctions can be imposed to protect and further the public interest. Private causes of action based on alleged violations of the rules are expressly forbidden. In short, the rules of conduct are both prophylactic and remedial; they are not intended to be used as swords to battle opposing lawyers in collateral proceedings or to create civil liability for such lawyers where none otherwise exists.
While defendants Gordon and Levitt certainly had ethical duties, therefore, to avoid making or assisting in the making of loans to former justice Fuyat, to disclose defendant Fuyat's solicitation of the loans and the existence of the loans and to avoid appearing before him during the ongoing loan activity, those duties were not intended to run to the personal benefit of defendants' adversary; rather, the ethical obligations imposed on them were for the benefit of the public and to aid in the proper administration of justice. Tappen v. Ager, 599 F.2d 376 (10th Cir. 1979); Bickel v. Mackie, 447 F. Supp. 1376, 1381 (N.D. Iowa 1977), aff'd 590 F.2d 341 (8th Cir. 1978); L H Airco,Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989);Garcia v. Rodey, Dickason, Sloan, Akin Robb, P.A., 750 P.2d 118, 123 (N.M. 1988). Moreover, even if plaintiff Hurley, as defendants' adversary, could be deemed to be an intended beneficiary of the lawyers' broader duty to the public and the judicial system, defendants' violation of the rules cannot give rise to a private right of action for civil damages by plaintiff against them for breach of their ethical obligations. Bickel v.Mackie, 447 F. Supp. at 1383; Weiszmann v. Kirkland and Ellis,732 F. Supp. 1540, 1544 (D. Colo. 1990); L H Airco, Inc. v.Rapistan Corp., 446 N.W.2d at 380; Garcia v. Rodey, Dickason,Sloan, Akin Robb, P.A., 750 P.2d at 123; Terry Cove North v.Marr Friedlander, 521 So.2d 22, 23 (Ala. 1988). "The remedy for such a breach is a public one and not a private one."Merritt-Chapman Scott Corp. v. Elgin Coal, Inc., 358 F. Supp. 17, 22 (E.D. Tenn. 1972).
Cognizant of his inability to premise his negligence claims against defendants Gordon and Levitt on their violations of the ethical rules per se, plaintiff Hurley seeks to transform those ethical obligations into separate, substantive duties of care owed to him under tort law. He argues that "[w]hile the Code of Professional Conduct does not `augment' the substantive legal duties of lawyers, no case has ever held that the Code negates the existence of substantive legal duties owed by lawyers. In addition, while the rules do not create a private right of action against an attorney, no case has ever held that the Code negates the right to bring a tort action against an attorney." Memorandum in Support of Plaintiff Hurley's Objection to Defendant Gordon's Motion to Dismiss at 22. He argues, therefore, for the creation of a common law duty running from an attorney to his adversary to exercise reasonable care as an attorney and officer of the court to protect the integrity of the court process and to protect all of the litigants, including his adversary, from financial loss that would accrue during the litigation of a meaningless, futile and tainted court proceeding. See Complaint, paragraph 15.
When plaintiff Hurley's negligence complaint is parsed, however, it reduces to a claim that defendants engaged in conduct prejudicial to the administration of justice, in breach of their ethical obligations under the codes of conduct. While not characterized by plaintiff Hurley as a private cause of action for violation of the provisions of the codes of conduct perse, it clearly is a claim for civil liability, asserted by a private litigant against his opposing counsel, that arises out of and is based on violations of the rules of professional ethics — in direct contravention of the the Rules of Professional Conduct and settled case law.
To allow plaintiff Hurley to sue defendants, under the guise of negligence, for violating their professional duties as lawyers and officers of the court would be to turn the rules of conduct on their head. Once those rules are poured into the law of negligence in the form of duties of care owed to private, adverse litigants rather than to the public at large, they begin to lose their character as ethical guideposts and the means by which lawyer misconduct can be remedied extra-judicially. Those rules exist not for the benefit of unethical or corrupt lawyers, but for the benefit of the public, whose interest it is not only that lawyers practice law ethically but also that they remain free to counsel and litigate without fear of unwarranted professional attack. Attorneys should not have to fear that adverse litigants will haunt them with litigation charging violations of the rules of professional conduct. Imposing such a burden would do nothing to augment the ethical practice of law but could chill effective and zealous representation, undermine the civility of the profession and ultimately compromise the very public interest that the rules seek to protect.
B.
Even assuming, arguendo, that plaintiff Hurley's complaint can be viewed as asserting causes of action for negligence that are not premised on violations of the rules of conduct, the breaches that plaintiff alleges must be of legally cognizable duties of care owed by defendants Gordon and Levitt to their adversary. A review of pertinent case law, however, suggests that no such duty exists.
In National Savings Bank v. Ward, 100 U.S. 195, 199-200 (1880), the United States Supreme Court held that, absent fraud, collusion or unusual circumstances, attorneys could not be liable in negligence to third parties with whom they were not in privity. Over time, the general doctrine of privity began to erode. See, e.g., MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E, 1050 (1916) (Cardozo, J.); Glanzer v. Shepard,233 N.Y. 236, 135 N.E. 275 (1922) (Cardozo, J.). Indeed, "there is no requirement of privity in Rhode Island to maintain an action in tort." Forte Bros. v. National Amusements, Inc.,525 A.2d 1301, 1303 (R.I. 1987). See also Temple Sinai-SuburbanReform Temple v. Richmond, 112 R.I. 234, 308 A.2d 508 (1973). Thus, even though most cases still find attorneys not liable to third persons for negligence, in a variety of factual situations, the trend nevertheless can be said to be away from requiring privity between parties as a prerequisite to bringing suit. Annot., What Constitutes Negligence Sufficient to RenderAttorney Liable to Person Other Than Immediate Client, 61 A.L.R. 4th 464, 477 (1988).
Courts have abandoned the strict privity requirement in narrow factual situations to allow for third-party negligence suits. The two situations most productive of third-party claims have been will drafting and examination of titles. Garcia v.Rodey, Dickason, Sloan, Akin Robb, 750 P.2d at 122. Negligence suits against attorneys have been allowed under several different theories.
First, some courts have recognized the right of one who is not a contracting party to bring a negligence action against an attorney as a third-party beneficiary of the contract between the attorney and his or her client. See, e.g., Flaherty v.Weinberg, 303 Md. 116, 492 A.2d 618 (1985); Stowe v. Smith,184 Conn. 194, 441 A.2d 81 (1981).
Second, some courts have recognized liability to third persons, at least in some circumstances, where the attorney negligently rendered services which he or she should have recognized as involving a foreseeable injury to a third party.See, e.g., Juergens v. Abraham, 616 F. Supp. 1381 (D.Mass. 1985); Heyer v. Flaig, 70 Cal.2d 223, 74 Cal.Rptr. 225,449 P.2d 161 (1969).
Finally, some courts have employed a "balancing of factors" theory to determine whether a cause of action is stated by a third party against an attorney. See, e.g., Stewart v.Sbarro, 142 N.J. Super. 581, 362 A.2d 581 (1976); Licata v.Spector, 26 Conn. Sup. 378, 225 A.2d 28 (1966). This approach originated in California with the case of Biakanja v. Irving,49 Cal.2d 647, 320 P.2d 16 (1958), wherein a third party asserted a negligence claim against a notary public who had engaged in the unauthorized practice of law and improperly prepared a will of which the third-party plaintiff was the sole intended beneficiary. The court held that the determination of whether, in a specific case, the defendant will be held liable to a third person not in privity is a matter of policy which involves the balancing of several factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of the harm to the plaintiff, the degree of certainty that the plaintiff suffered an injury, the closeness of the connection between the defendant's conduct and the injury and the policy of preventing future harm.
The Rhode Island Supreme Court has not yet had occasion to address the test to be applied to determining whether an attorney has a duty of care to a third party. It has relied on another similar California case, however, to articulate a balancing test to be applied in determining, more generally, whether a duty of care exists that can support a negligence action. Banks v.Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987) (citingThompson v. County of Alameda, 27 Cal.3d 741, 750, 614 P.2d 728, 732-33. 167 Cal.Rptr. 70, 74-75 (1980)).
Notwithstanding the loosening of the privity requirement and the allowance of third-party suits against attorneys in certain circumstances, however, plaintiff Hurley has been unable to cite to this court (nor has the court been able to find) any jurisdiction that has found a duty of care running from an attorney to his or her adversary that could support imposition of negligence liability. See Nelson v. Miller, 607 P.2d 438, 450 (Kan. 1980) ("We have been cited no cases, and we have found none, where an attorney has been held liable to his client's adversary in prior civil litigation on the basis of professional negligence alone."); Annot., What Constitutes NegligenceSufficient To Render Attorney Liable To Person Other ThanImmediate Client, 61 A.L.R. 4th at 474 n.10 ("[N]o jurisdiction has found a duty by an attorney to an adverse party."); Annot.,Attorney's Liability, To One Other Than Immediate Client, ForNegligence In Connection With Legal Duties, 61 A.L.R. 4th 615, 625 (1988) ("the overwhelming weight of authority holds that an attorney owes no legal duty to his clients' adversary the breach of which would support a negligence action"). Indeed, there is voluminous authority to the contrary. See cases collected in Annot., Attorney's Liability, To One Other Than ImmediateClient, For Negligence In Connection With Legal Duties, 61 A.L.R. 4th at 645-652 Supp. at 22.
This reluctance to impose such a duty is grounded in policies that reflect and protect the adversary system. That system depends on the zealous representation of opposing interests. By definition, therefore, clients rely on their own attorneys to protect their interests and not on counsel to their adversary. Absent such reliance, they cannot be viewed as foreseeable victims of opposing counsel's professional negligence. As stated by the court in Bickel v. Mackie:
 The attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct.
447 F. Supp. at 1381.
In addition, attorneys owe a paramount duty of loyalty to their clients that could be compromised by imposing on them an added duty of care to their adversaries. An attorney should not be made to answer to two masters whose interests are or may be diametrically opposed. Imposing a duty upon an attorney to protect the interests of the adverse party as well as the interests of the party whom the attorney represents would "clearly create conflict-of-interest situations." Doyle v.Shlensky, 458 N.E.2d 1120, 1125 (Ill. Ct. App. 1983) (quotingPelham v. Griesheimer, 440 N.E.2d 96 (1982)). See also Garciav. Rodey, Dickason, Sloan, Akin Robb, P.A., 750 P.2d at 122 (holding that an attorney has "no duty to protect the interests of a nonclient adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client"); Berlin v. Nathan, 64 Ill. App.3d 940, 952-53,381 N.E.2d 1367, 1376 (1978), cert. denied, 444 U.S. 828, reh'gdenied, 444 U.S. 974 (1979) ("we believe it would be contrary to public policy for us to hold that an attorney has a duty to an [adverse party] . . . since we would be creating an insurmountable conflict of interest between the attorney and the client").
In lieu of creating a duty running from attorney to adversary, the law imposes ethical obligations on lawyers that run to the client, the tribunal and the public at large. Tappenv. Ager, 599 F.2d 376 (10th Cir. 1979) ("[T]he duty is owed by the lawyer to his client and to the legal system. It does not form a basis for a suit by an opposing party."); L H Airco,Inc. v. Rapistan Corp., 446 N.W.2d 372, 379 (Minn. 1989) ("An attorney's duty of care is owed to the client and the court, not to the client's opponent."); Garcia v. Rodey, Dickason, Sloan,Akin Robb. P.A., 750 P.2d at 122 ("[A] duty is owed by the lawyer to his client and to the legal system. Negligence does not from a basis for suit by an opposing party."). As stated by the court in Bickel v. Mackie:
 [A]n ethical duty of disclosure is not intended to run to the personal benefit of an attorney's adversary. Rather, the duty of disclosure is for the benefit of the tribunal and is an obligation imposed upon an attorney to aid the administration of justice. This duty to disclose cannot be the basis for imposing civil liability on an attorney.
447 F. Supp. at 1381.
Attorneys are thus guided by their consciences, informed by rules of professional ethics, and subject to disciplinary sanction for violating their oaths. Civil liability of lawyers to their adversaries is imposed not for negligent conduct but is reserved for intentional acts of malicious prosecution, fraud, collusion and criminal misconduct. See, e.g., Dennis v.Sparks, 449 U.S. at 28-29 (private parties who conspired with state court judge may be liable in civil rights action under section 1983); National Savings Bank v. Ward, 100 U.S. at 199-200 (fraud and collusion exist as exceptions to general rule that attorneys are not liable in negligence to third parties); L H Airco, Inc. v. Rapistan, 446 N.W.2d at 380 ("An attorney who makes affirmative misrepresentations to an adversary, or conspires with his or her client, or takes other active steps to conceal the client's fraud from the adversary may be liable for fraud."); Berlin v. Nathan, 381 N.E.2d at 1376 ("even in states extending the attorney's responsibility and liability to intended beneficiaries of the client's conduct, such as intended legatees under a will, no liability to the adverse party sued by the client has been found absent malicious prosecution.").
Given the clear weight of this authority, this court finds no basis upon which to create a legal duty in tort running from these defendants, as attorneys, to plaintiff Hurley, as their client's adversary in litigation, to protect his interests. Plaintiff Hurley argues that he had a right to rely on opposing counsel to protect the integrity of the proceedings and his interests and that imposing such a duty on defendants would not compromise the interest of their client, as that interest must be represented within the ethical bounds of the law. Yet the court's task in determining "duty" is not simply to assess this particular plaintiff's injury in light of the conduct of these particular defendants. See Banks v. Bowen's Landing Corp.,
522 A.2d at 1226. The court instead must evaluate the larger policy ramifications of imposing a duty on attorneys to their adversaries to abide by the strictures of professional ethics.
One of the greatest risks in creating such a duty in tort is precisely why the rules of professional conduct forbid private causes of action for a violation of the rules: the potential for a civil suit for negligence being used by a lawyer's adversary not to vindicate the public interest or his own private interest as a party aggrieved by the lawyer's unethical conduct but to gain a procedural advantage. This risk exists because of the fundamental nature of the adversary system which, by definition, precludes reliance by a client on the actions or inactions, whether ethical or unethical, of opposing counsel. Creating duties running from a lawyer to his or her adversary could compete with and undermine the lawyer's ethical duty to represent the client zealously. Trying to limit this duty to situations where the client's interest would not be compromised would create an unworkable standard that could spawn litigation adverse to the client's interest.
Moreover, it is not necessary to expose attorneys to civil liability for negligence to deter professional misconduct. Such misconduct is deterred effectively, in the first instance, by the mere existence of the codes of conduct which serve as the ethical guideposts for attorneys in their professional lives. Under the applicable codes of conduct, a lawyer who commits a breach of professional ethics risks imposition of the disciplinary sanctions of disbarment, suspension or public censure and orders for restitution, community or pro bono legal service or counselling. It is difficult to imagine more powerful deterrents to professional misconduct than these sanctions which carry the attendant risks of loss of one's professional reputation and livelihood.
While this court declines, therefore, to impose on these defendant-attorneys an unprecedented duty in tort to protect the interests of their adversary in litigation, it does not deny plaintiff Hurley, or any other adverse litigant, a forum in which to seek redress for the alleged ethical misdeeds of opposing counsel. An aggrieved litigant is free to appeal from a judicial decision that he or she believes has been tainted by the unethical conduct of counsel to his or her adversary. The aggrieved party also may file a complaint with the appropriate disciplinary authorities to seek disciplinary sanctions against opposing counsel, including restitution for any financial loss incurred as a result of the lawyer's misconduct. It is the disciplinary complaint, rather than a civil damages action for negligence, that should be used by any member of the public aggrieved by a lawyer's breach of professional ethics — including a litigant adverse to the attorney — as the appropriate vehicle for alleging lawyer misconduct and seeking redress. In addition, if there is evidence of fraud, collusion or criminality, the adverse party also may have a civil cause of action against opposing counsel for intentional tortious wrongdoing.
CONCLUSION
Plaintiff Hurley's complaint against defendant Fuyat is barred by the doctrine of judicial immunity. Plaintiff's complaints against defendants Gordon and Levitt for negligence are barred by the absence of any legal duty running from defendants, as attorneys, to plaintiff Hurley, as their adversary, to protect his interests. Accordingly, the dispositive motions filed by defendants Fuyat, Gordon and Levitt are granted. Counsel for the defendants shall prepare and submit to the court forthwith forms of orders and judgments reflective of this decision.
* The issue of whether there exists a legal duty to protect the integrity of the court process and all of its litigants that runs from opposing counsel to his or her adversary underlies the motion to dismiss filed by defendant Gordon and the motion for summary judgment filed by defendant Levitt. Both defendants argue that, based on the allegations of the complaint, there exists no such duty such that plaintiff Hurley has failed to state a claim for negligence against them as a matter of law. Accordingly, plaintiff Hurley's complaint against defendants Gordon and Levitt will be reviewed in accordance with the dictates of Rule 12(b)(6). Regardless of whether the motions are analyzed under Rule 12(b)(6) or Rule 56, however, the outcome is the same.